[No. 18662-1-I.   Division One.   April 11, 1988.]

KAREN CANTU, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.

*Jean Schiedler–Brown,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Marcia Nelson, Assistant,* for respondent.

WEBSTER, J.—Karen Cantu appeals an adverse decision regarding her discrimination and retaliation claims contending that the trial court erred in its failure to admit certain Equal Employment Opportunity Commission (EEOC) findings. We affirm.

## PROCEDURAL HISTORY

From 1976 to 1980, Cantu was an employee of the City of Seattle, City Light Department (hereinafter City Light). Based upon events which will be described herein, one of the several EEOC complaints filed by Cantu alleged that she was discriminated against on the basis of her sex and national origin; she emigrated from Germany in the 1950's. The EEOC found in favor of Cantu and, subsequently, Seattle's Human Rights Department (hereinafter HRD), adopted the EEOC finding that Cantu had a right to sue. Once a reasonable cause determination is made pursuant to the Seattle Fair Employment Practices Ordinance, Seattle Municipal Code (SMC) 14.04.150(B), the Director of HRD must confer with the parties within 60 days to determine an appropriate remedy. Neither the Director nor Cantu attempted to reach a settlement during that period. In fact, before the 60 days elapsed, Cantu filed an employment discrimination action in superior court.

In a preliminary proceeding, the court found that HRD adopted the EEOC findings in their entirety. A jury found that Cantu had not been discriminated against because of sex or national origin nor had she been retaliated against because of the complaints she filed against the City. Cantu then moved the court for a writ of mandamus. The motion was denied on the grounds that Cantu had an adequate remedy at law, that she failed to pursue an appeal of the administrative order pursuant to Seattle's Fair Employment Practices Ordinance, SMC 14.04, and that she elected her remedy by filing an action in superior court rather than pursuing relief under SMC 14.04. Cantu timely appeals.

STATEMENT OF FACTS

During her employment at City Light, Cantu was promoted to a high level exempt management position. In 1979, claiming that she was uncooperative and unprofessional, Cantu's superior requested her resignation. She tendered her resignation and filed her first EEOC complaint. Cantu requested that she be placed in another position within City Light. As a result of that request, she was placed in a Program Coordinator III position (PC III), and her resignation was termed a demotion. The PC III is a civil service position; her former management position did not have civil service standing. Although she frequently requested assignments, Cantu was not given sufficient work; eventually, however, she was given work assignments.

In early 1980, Cantu and others wrote a memo to the Director of Personnel for the City calling the City's attention to the position of one Daniel Sullivan. His position was intended to be made exempt, but was actually a temporary position. According to a personnel ordinance, temporary employees in civil service positions may not hold the positions more than 1,040 hours; when that time expires, competitive processes must be conducted. A competitive process was conducted for Sullivan's position. As a result of the Sullivan case, the city personnel department conducted an audit and discovered many 1,040 hours violations in various city departments. Ironically, Cantu's position was among them. The 1,040 hours issue received local press.

A competitive selection process was conducted for the PC III position which Cantu held. Cantu competed for the position and, based on her qualifications as listed in her résumé, she was rated second on the register. Three panelists were selected to interview four candidates for the PC III position; the candidates were picked from a pool of qualified applicants from the register. One of the panelists was a city equal employment officer who interviewed Cantu for the PC III position on one day and, on the following day, addressed Cantu's discrimination complaint. The other two panelists claimed to be unaware that Cantu had filed

complaints. All applicants were asked the same job–related questions. Cantu was rated fourth by all three panelists and another competitor was unanimously rated first. As a result, Cantu was terminated. It should also be noted that the City requested an investigation of Cantu's background which revealed that Cantu's résumé falsified her education and work experience.

## EEOC DETERMINATION

Cantu argues that the trial court erred when it refused to admit the EEOC findings. Admissibility of EEOC determinations is an issue of first impression in Washington. Although the federal circuit courts are divided with regard to the admissibility of EEOC determinations in Title VII cases, a majority of the circuits have adopted a discretionary standard. *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304 (8th Cir. 1984); *Nulf v. International Paper Co.*, 656 F.2d 553 (10th Cir. 1981); *Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir. 1977); *Gillian v. Federal Paper Board Co.*, 479 F.2d 97 (2d Cir. 1973); *Cox v. Babcock & Wilcox Co.*, 471 F.2d 13 (4th Cir. 1972); *Heard v. Mueller Co.*, 464 F.2d 190 (6th Cir. 1972).

> While EEOC reports may contain information that would be useful to the jury, their probative value may be outweighed by problems that would result from their admission. . . . EEOC determinations are not homogeneous products; they vary greatly in quality and factual detail. . . . [W]e hold that in an employment discrimination case the admission of administrative findings, such as an EEOC reasonable cause determination, is to be left to the sound discretion of the trial court. We believe that this is particularly important in cases, like the present one, in which an employment discrimination claim is tried to a jury.
>
> . . . Because substantial evidence was presented to the jury on all matters summarized in the report, there is little probative value in the EEOC's conclusory statements regarding the same evidence. To admit the report under these circumstances would amount to admitting the opinion of an expert witness as to what conclusions the

jury should draw, even though the jury had the opportunity and the ability to draw its own conclusions from the evidence presented regarding disparate treatment.

*Johnson,* at 1309.

The Fifth and Ninth Circuits have held that EEOC reports brought under Title VII actions are per se admissible. *McClure v. Mexia Indep. Sch. Dist.,* 750 F.2d 396 (5th Cir. 1985); *Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502 (9th Cir. 1981). Not only are EEOC determinations admissible, they are highly probative. *Plummer,* at 505. The admissibility of EEOC findings is based upon an exception enumerated in Fed. R. Evid. 803(8)(c), which provides that, in civil actions, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness, are not excluded from the hearsay rule. "EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination at issue in the civil proceedings." *McClure,* at 400.

Although federal court decisions are instructive, they are not binding on state courts in matters of state law, *Michail v. Fluor Mining & Metals, Inc.,* 180 Cal. App. 3d 284, 225 Cal. Rptr. 403, 404 (1986) (the court did not admit EEOC determinations brought under the state's Fair Employment and Housing Act based on its findings that their probative value was outweighed by the prejudicial effect); *Weeks v. Chief of Wash. State Patrol,* 96 Wn.2d 893, 639 P.2d 732 (1982). We decline to follow the strict per se admissibility rule adopted by the Fifth and Ninth Circuits. Instead, we join the majority of Circuits in adopting the discretionary standard.

In the case sub judice, concerns regarding the trustworthiness of the hearings were raised by City Light at trial. In addition, the EEOC employee who investigated the Cantu case testified before the jury and provided the jury with the opportunity of hearing testimony related to the EEOC

determination. *See Gillian,* at 99–100 (exclusion of an EEOC investigative report was permitted where the investigator who compiled the portion of the report in question testified from it during the trial). Furthermore, unlike the cases of *McClure* and *Plummer* of the Fifth and Ninth Circuits,[1] the case at hand is not based upon a Title VII action. In light of these considerations, the trial court did not abuse its discretion in sustaining City Light's objection to the admission of the EEOC findings and the holding that the probative value of the findings was outweighed by the prejudicial effect. *See State v. Valladares,* 31 Wn. App. 63, 72, 639 P.2d 813 (1982), *aff'd in part, rev'd in part,* 99 Wn.2d 663, 664 P.2d 508 (1983); *State v. Woolworth,* 30 Wn. App. 901, 639 P.2d 216 (1981); ER 403. We affirm.

The remainder of this opinion, having no precedential value, will be filed for public record in accordance with the rules governing unpublished opinions. *See* RCW 2.06.040.

SCHOLFIELD, C.J., and GROSSE, J., concur.

---

[1]While Cantu originally included a cause of action pursuant to Title VII, that cause was dismissed on November 15, 1984, because of the federal courts' exclusive jurisdiction over such matters. This court does not need to reach, however, the issue of whether a different standard should apply to state actions or causes other than Title VII actions.