**Anthony W. PAOLITTO, Plaintiff–Appellee–Cross–Appellant,**

v.

**JOHN BROWN E.&C., INC., and Crawford & Russell, Inc., Defendants–Appellants–Cross–Appellees.**

Nos. 97–7477, 97–7483.

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1998.

Decided July 17, 1998.

David S. Golub, Silver Golub & Teitell, Stamford, Connecticut (Jonathan M. Levine, of counsel), for Plaintiff–Appellee–Cross–Appellant.

Mark L. Zaken, Cummings & Lockwood, Stamford, Connecticut (Stephanie E. Lane, of counsel), for Defendants–Appellants–Cross–Appellees.

Before: WINTER, Chief Judge,
PARKER, Circuit Judge, and
SCHWARZER,* District Judge.

WINTER, Chief Judge.

This appeal and cross-appeal arise from a complaint alleging that Anthony Paolitto was unlawfully denied a promotion to the position of Chief Structural Engineer by John Brown E.&C., Inc. ("Brown"). Paolitto claims that the denial was illegal because it was: (i) based on his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); (ii) in breach of a 1981 oral contract; and (iii) in retaliation for his filing an administrative claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), also in violation of the ADEA. A jury returned a verdict in favor of Paolitto on all three claims and

awarded compensatory damages in the following amounts: $100,000 for discriminatory failure to promote, $100,000 for breach of contract, and $29,000 for retaliation. The jury also found that Brown had acted willfully, thus entitling Paolitto to liquidated damages on the first and third claims in amounts equal to the jury's compensatory damage awards. *See* 29 U.S.C. §§ 626(b), 216(b). Judge Goettel ruled that each of the three claims asserted an alternate theory of liability that would support only a single damage award. He then entered judgment based on the ADEA failure-to-promote claim because it would maximize the return to Paolitto. Accordingly, Paolitto was awarded $200,-000—$100,000 for compensatory damages and $100,000 for liquidated damages—plus $60,000 in prejudgment interest. Both parties appeal.

Brown contends that Judge Goettel erred by excluding from evidence the findings and investigative file of the CHRO—the state equivalent of the EEOC—which concluded that Paolitto's evidence of age discrimination was insufficient. Brown contends further that the compensatory damage award on Paolitto's ADEA failure-to-promote claim was excessive. Paolitto argues that, although the compensatory damage awards on his first and third claims do overlap entirely, he should have received liquidated damages on both claims. Paolitto also asserts that he is entitled either to an appointment to the position of Chief Structural Engineer or to an award of front pay. For the reasons that follow, we affirm.

## BACKGROUND

Paolitto was hired in 1971 as a design engineer by Crawford & Russell, Brown's predecessor company.[1] In 1981, Paolitto was offered a job at a rival engineering company. He was allegedly persuaded to stay with Brown only after being promoted to Assistant Chief Structural Engineer and receiving a promise from the then-Chief Structural

---

* The Honorable William W Schwarzer, of the United States District Court for the Northern District of California, sitting by designation.

1. Crawford & Russell, Inc. was named as a defendant in the present action. For the sake of simplicity, however, we refer to the defendants collectively as "Brown."

Engineer, Leo Agranoff, that Paolitto would succeed him as Chief when Agranoff retired.[2]

Agranoff died in 1985, and Paolitto was passed over for the position of Chief in favor of Neil Runyan. In 1987, Runyan resigned and Joseph Cozza, who had become the Vice President of Engineering in January 1987, began discussing Runyan's potential successor with department heads and project managers. Ultimately, Cozza hired Robert Coleman, who was then 37 years old. Paolitto was 57. Cozza articulated three reasons for hiring Coleman over Paolitto: (i) Paolitto had a history of using excessive overtime in the jobs he supervised; (ii) he had poor interpersonal skills; and (iii) he did not have a Professional Engineers' License.

Paolitto filed an administrative charge of age discrimination with the CHRO. In January 1989, the CHRO dismissed Paolitto's charge for lack of sufficient evidence of age discrimination. Paolitto claims that, after he filed his charge with the CHRO, Brown gave him only insignificant assignments that curtailed his professional development. This suit followed.

Paolitto's amended complaint contained three claims: (i) that Brown violated the ADEA by failing to promote Paolitto because of his age to the position of Chief Structural Engineer; (ii) that Brown's failure to promote him breached the oral contract between Paolitto and Agranoff; and (iii) that Brown retaliated against him, in violation of the ADEA, for filing an administrative charge with the CHRO.

At trial, Paolitto offered evidence showing that, by virtue of his experience, job appraisals, and responsibility, he was more qualified than Coleman for the position of Chief Structural Engineer. He also offered evidence that the bases articulated by Cozza for passing over Paolitto in 1987 were either false or irrelevant. This evidence was sufficient to allow a jury to conclude that Brown violated the ADEA by failing to promote Paolitto and by retaliating against him. The issues on appeal and cross-appeal involve the exclusion

of the CHRO findings and investigative file and the denial of various post-trial motions. The facts relevant to these issues follow.

### A. Exclusion of CHRO Findings

In support of his age-discrimination claim, Paolitto introduced evidence indicating that Cozza had a pattern of appointing young workers to senior management positions. Specifically, Paolitto provided a chart showing the ages of the six persons appointed by Cozza to senior management positions between 1987 and 1989. The average age of such appointees was 46.3, but the chart noted that the "[a]verage age of promotions/appointments before Paolitto['s] age discrimination complaint"—i.e., his CHRO filing—was 39.6. This notation and Paolitto's accompanying examination of Cozza were aimed at revealing that Cozza's post-CHRO-filing appointments—with an average age of 53—were an attempt to cover up Cozza's prior discriminatory practices in the face of Paolitto's age-discrimination charge. In response, Brown sought to introduce the CHRO finding—which Judge Goettel had previously ruled inadmissible—to show that the CHRO charge had been dismissed in Brown's favor before Cozza made any of the post-filing appointments. Judge Goettel refused to admit the CHRO finding but allowed Cozza to testify that there was "no agency complaint pending at the time" when he made the later appointment decisions. On Paolitto's redirect examination, Cozza testified that "when the [CHRO] dismissed this case I thought it was over. I had no reason to think it would go any further." At this point, Paolitto's counsel began questioning Cozza about the nature and quality of the CHRO investigation. Brown again sought to admit the CHRO findings, arguing again that Paolitto had "opened the door." Once more, Judge Goettel refused to admit the evidence, but allowed Brown to elicit from Cozza information about the testimony provided to the CHRO investigator.

**2.** Agranoff's alleged promise forms the basis of Paolitto's breach of contract claim. Brown appeals from several rulings concerning this claim. Because Judge Goettel entered judgment on Paolitto's failure-to-promote claim and because we affirm that judgment, we need not address these arguments.

## B. *Verdict and Post-trial Rulings*

The jury returned a verdict in favor of Paolitto on all three claims and further found that Brown had acted willfully, thus entitling Paolitto to liquidated damages under the ADEA. As noted, the jury awarded Paolitto $100,000 in compensatory damages on his failure-to-promote claim and $29,000 in compensatory damages on his retaliation claim. Judge Goettel ruled that, because Paolitto's damages for the latter claim were subsumed within his damages for the former, he was entitled to compensatory damages only on his failure-to-promote claim, the claim that produced the largest damage award. Because Brown had acted willfully, Judge Goettel awarded Paolitto an additional $100,000 in liquidated damages, for a total amount of $200,000. *See* 29 U.S.C. §§ 626(b), 216(b).

Both parties filed post-trial motions. Brown moved for a new trial on damages or, alternatively, for a remittitur, contending that the verdict was not supported by the evidence. Judge Goettel denied the motion. Paolitto, who was terminated by Brown in 1993, moved for an order directing his appointment to the position of Chief Structural Engineer and/or "monetary relief in lieu of such appointment." Judge Goettel denied Paolitto's motion because he had not alleged that his 1993 termination was discriminatory and because he had waited until essentially the eve of trial before raising the issue of post-termination relief. Paolitto also moved for an order making clear that, although he was entitled to compensatory damages only on his failure-to-promote claim, he was entitled to liquidated damages on both that claim and his retaliation claim. Judge Goettel denied that motion, reasoning that the ADEA's liquidated-damages provision precludes an award of liquidated damages that exceeds a plaintiff's compensatory damages.

## DISCUSSION

### A. *Brown's Appeal*

Brown claims that Judge Goettel erred by refusing to admit the CHRO findings and investigative file and that the jury's damage award was excessive. We address these arguments in turn.

### 1. Exclusion of CHRO Finding

Brown argues first that findings of the EEOC or equivalent state agencies must, as a matter of law, be admitted in subsequent trials. We disagree. "[U]nless the sources of information or other circumstances indicate lack of trustworthiness," Fed.R.Evid. 803(8)(C), such findings fall within the "public records" exception to the hearsay rule, *see id.* ("factual findings resulting from an investigation made pursuant to authority granted by law"); *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Generally, however, the fact that evidence is within an exception to the hearsay rule does not by itself make it admissible *per se*. The district court generally has discretion to exclude such hearsay on other grounds, such as where the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed.R.Evid. 403; *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167–68, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (observing that "a trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof . . . that she determines to be untrustworthy" and that "the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing" reports excepted from the hearsay rule under 803(8)(C)). Thus, in *City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir.1981), we affirmed the exclusion of a federal agency's report. We held that, even if the report were admissible under Rule 803(8)(C), the district court did not abuse its discretion in holding "that the report should be excluded under Fed .R.Evid. 403 because the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value." *Id.*

Brown does not quarrel with this general framework, arguing instead that the probative value of EEOC or state-agency findings necessarily outweighs any danger of unfair prejudice. In support of this proposition, it relies on decisions of the Fifth and Ninth Circuits, which hold that "it is reversible error for the district court to exclude an EEOC probable cause determination from a

Title VII trial." *Heyne v. Caruso*, 69 F.3d 1475, 1483 (9th Cir.1995); *accord Smith v. Universal Servs., Inc.*, 454 F.2d 154, 156–58 (5th Cir.1972) (in banc).

These cases do not persuade us that EEOC or state-agency determinations must be admitted categorically. First, insofar as the Fifth and Ninth Circuits have adopted a rule of *per se* admissibility, they are in the minority. Most circuits that have considered the issue have left the question of whether to admit EEOC or state-agency findings to the sound discretion of the district court. *See, e.g., Hall v. Western Prod. Co.*, 988 F.2d 1050, 1057–58 (10th Cir.1993); *Barfield v. Orange Cty.*, 911 F.2d 644, 650–51 (11th Cir. 1990); *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir.1984); *McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924, 929–30 (7th Cir.1984); *Walton v. Eaton Corp.*, 563 F.2d 66, 75 & n. 12 (3d Cir.1977) (in banc).[3]

Second, we adopt the majority approach because, as the Eighth Circuit noted in *Johnson*, employment-agency determinations "are not homogeneous products; they vary greatly in quality and factual detail." 734 F.2d at 1309. The party against whom such a determination is admitted must attempt to expose the weaknesses of the report, *see id.*, an effort that may well confuse or mislead the jury and result in an undue waste of time. *See* Fed.R.Evid. 403. We believe that the district court is in the best position to consider the quality of the report, its potential impact on the jury, and the likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency. *See Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 821–22 (10th Cir.1981).

■ Applying this standard, we see no abuse in the present case. Judge Goettel gave two reasons for excluding the CHRO determination: the evidence Paolitto introduced at trial undercut many of the CHRO's factual findings and Brown had a full opportunity to present to the jury all the evidence it had submitted to the CHRO. These were legitimate reasons to exclude the CHRO determination. *See Hall*, 988 F.2d at 1058 (district court did not abuse discretion in excluding state agency report where "all the evidentiary matter before the [state agency] could be presented to the jury" and, thus, sole purpose of admitting report "would be to suggest to the jury that it should reach the same conclusion" as agency) (internal quotations omitted); *Denny*, 649 F.2d at 822 (agency finding has low probative value where jury presented with "substantial admissible evidence on the matter").

■ Brown next argues that, even if the CHRO findings were not admissible *per se*, they should have been admitted once Paolitto "opened the door" by introducing evidence suggesting that Cozza changed his hiring practices only in response to Paolitto's

---

**3.** Although their decisions are often cited as requiring the admission of EEOC and state-agency findings, we are not convinced that even the Fifth and Ninth Circuits would categorically require admission of the agency findings in this case. In *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488 (9th Cir.1986), the Ninth Circuit held that its rule of *per se* admissibility applicable to probable cause determinations does not apply to letters of violations. The Ninth Circuit explained:

The difference between the two becomes critical when considering the potential for prejudicial impact on a jury. In a letter of violation the EEOC concludes that a violation of [Title VII] has occurred, whereas in a probable cause determination the EEOC determines only that there is probable cause to conclude that a violation of Title VII has occurred. A finding of probable cause does not suggest to the jury that the EEOC has already determined that

there has been a violation.... A letter of violation, however, represents a determination by the EEOC that a violation of the Act has occurred and thus results in a much greater possibility of unfair prejudice.

*Id.* at 1500; *accord EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1095 (5th Cir.1994) (following *Gilchrist* ).

In the present case, Judge Goettel excluded neither a finding of probable cause nor a letter of violation, but rather a finding of insufficient evidence. In many respects, this finding—which amounts to essentially a finding of no probable cause—resembles a categorical legal conclusion akin to a letter of violation. A finding of probable cause states only that a case is a close one, whereas a finding of no probable cause, like a letter of violation, conclusively resolves the administrative charge—albeit in favor of the opposite party.

CHRO filing and by challenging the sufficiency of the CHRO investigation. We again disagree.

■ "Opening the door" to evidence that has previously been excluded "gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence." *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir.1993). Judge Goettel acted within his discretion. In response to the claim that Cozza's 1989 hires were attempts to cover up past discrimination, Judge Goettel allowed Brown to inform the jury that, at the time Cozza made the hiring decisions in question, the CHRO charge was no longer pending. This ruling allowed Brown to rebut the claim that Cozza had hired older workers only because Brown was being investigated for possible age discrimination by the CHRO. In response to Paolitto's challenge to the quality of the CHRO investigation, Judge Goettel allowed Cozza to testify as to the information that the CHRO considered. Judge Goettel might well have been within his discretion in admitting the CHRO determination in these circumstances. However, we see no abuse of discretion in his more limited ruling, which avoided the prolonged inquiries into the reliability of the CHRO's administrative finding—a matter that was, in any event, of limited probative importance.

Because Brown sought to admit the CHRO's investigative file only as a foundation for the introduction of the CHRO's ultimate finding of no probable cause, the district court did not err in excluding the file itself. Moreover, because the court allowed Brown to introduce any evidence in that file so long as it was otherwise admissible, Brown was not prejudiced by the exclusion of the file as a whole. *See Gillin v. Federal Paper Bd. Co.*, 479 F.2d 97, 99–100 (2d Cir. 1973); *accord Smith v. Massachusetts Inst. of Tech.*, 877 F.2d 1106, 1113 (1st Cir.1989).

### 2. Excessive Damages

■ Brown next contends that the evidence did not support the jury's verdict of $100,000 on Paolitto's failure-to-promote claim and, accordingly, Judge Goettel should have granted its motion for a new trial or for a remittitur. Brown claims that the evidence showed as a matter of law that, had Paolitto been promoted, he could not have earned as much as the jury awarded him. *See, e.g., Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165–66 (2d Cir.1998) (purpose of backpay award is to restore employee to position he would have enjoyed but for discriminatory action). We disagree. We note that the calculation of damages is generally within the province of the jury, *see Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir.1990), and a district court's refusal to set aside a jury award will be overturned only for abuse of discretion. *See Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1058 (2d Cir.1990); *see also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 438, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

In the instant matter, the evidence showed that Runyan, upon his promotion to Chief, received a 15 percent salary increase and another 7.1 percent increase in the year following his promotion, and that Coleman received a 10 percent increase upon promotion to Chief and further increases of 10.6 and 5 percent in the year of promotion. The evidence also showed that, over the 16 years that Paolitto worked for Brown prior to being passed over for a promotion in 1987, Paolitto received an average annual increase of 9 percent. Had Paolitto received the same pay increases afforded either Coleman or Runyan upon their promotions, plus his average 9 percent annual increase, his total damages from 1987 to 1993 would have exceeded $100,000. While Brown introduced evidence indicating that the bonuses given to Coleman and Runyan were unusual and that neither received annual salary increases even approaching nine percent, the jury was entitled to discount this evidence.

Brown also argues that, even if Paolitto had been promoted in 1987, the jury should have subtracted from his damage award the amount of overtime pay that Paolitto received from 1987 to 1993. Brown contends

that he would not have been entitled to overtime as Chief Structural Engineer. However, when the district court instructed the jury that whether a Chief could earn overtime pay was a disputed issue of fact for it to resolve, Brown did not object to the instruction. Further, there is evidence in the record that both Runyan and Coleman received overall compensation in amounts above their base salary as Chief. In short, Judge Goettel did not abuse his discretion by refusing to disturb the jury's verdict.

## B. *Paolitto's Cross–Appeal*

Paolitto takes issue with the district court's post-trial rulings refusing to award him liquidated damages on his retaliation claim and denying his motion for equitable relief or front pay. Again, we address each argument in turn.

### 1. Liquidated Damages

Paolitto concedes that his ADEA damage claims overlapped entirely and, accordingly, that he was not entitled to more than $100,-000 in compensatory damages. The ADEA authorizes, in the case of willful discrimination, an award of liquidated damages equal to an award of compensatory damages. Section 626(b) states that the provisions of the ADEA are to be enforced in accordance with the remedies provided in, *inter alia*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and goes on to direct that "[a]mounts owing" under the ADEA "shall be deemed to be unpaid minimum wages or unpaid overtime compensation for the purposes of [FLSA § 216]," except that liquidated damages are payable only in cases of willful violations. FLSA § 216(b) provides that an employer violating the FLSA "shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or

their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

■ Paolitto argues that he should have been awarded $129,000 in liquidated damages. In other words, rather than arriving at a total amount of compensatory damages ($100,000) and then multiplying by two, as the Act's language seems to direct, Paolitto argues that the district court should first have multiplied all recovery under the ADEA ($100,000 for failure to promote and $29,000 for retaliation) by two and then have subtracted the overlapping compensatory damages—here, $29,000—to prevent a double recovery. Otherwise, Paolitto contends, the ADEA would provide insufficient protection to employees who suffer from multiple acts of discrimination but do not suffer multiple pecuniary injuries.

■ However, the plain language of ADEA § 626(b) and FLSA § 216(b) states that liquidated damages shall be in an amount equal to the employee's loss which, in Paolitto's case, is $100,000.[4] *See generally Coston v. Plitt Theatres, Inc.,* 831 F.2d 1321, 1328–30 (7th Cir.1987) (discussing "straightforward" language and legislative history of ADEA's liquidated-damages provision), *vacated on other grounds,* 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988). It is not our province to alter the plain meaning of statutory provisions. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("When the words of a statute are unambiguous, ... 'judicial inquiry is complete.'") (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)).

*United States v. Bornstein,* 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976), on which Paolitto relies, is inapposite. In *Bornstein,*

---

4. In *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564 (2d Cir.1989), we indicated in dictum our rejection of Paolitto's formulation. There, the plaintiff claimed that he was fired because of his age and in retaliation for challenging conduct that the ADEA made unlawful. It was undisputed that the claims asserted alternative theories of liability. The jury found for the plaintiff only on the retaliation claim, awarding him $50,000, but found that the retaliation was not willful. We upheld these findings, but ordered a new trial on

the discrimination claim. In so doing, we recognized that had the plaintiff not sought liquidated damages in connection with the discrimination claim, no new trial would have been needed because the plaintiff had already recovered all the compensatory damages to which he was entitled. A new trial was necessary, however, because there was still a possibility that a jury could have found that the employer had willfully discriminated against him. *See id.* at 1572.

the Supreme Court held that, for purposes of the double-damages provision of the False Claims Act, now codified at 31 U.S.C. § 3370(a), the "Government's actual damages are to be doubled before any subtractions are made for compensatory payments previously received." 423 U.S. at 316, 96 S.Ct. 523. Even assuming that this rule applies to the ADEA's liquidated-damages provision, an issue that we do not reach, *but see Kossman v. Calumet County*, 849 F.2d 1027, 1029–30 & 1029 n. 1 (7th Cir.1988) (liquidated damages under ADEA are calculated after, not before, amounts in mitigation have been subtracted from compensatory damages), the rule was not violated here. Paolitto suffered $100,000 in actual loss, which Judge Goettel doubled because Brown had willfully violated the statute. Under the plain language of ADEA § 626(b) and FLSA § 216(b), Judge Goettel did not err.

While Paolitto is correct that, in this case, Brown was not separately punished for retaliating against him, seeming inequities of this kind are inevitable in a statutory scheme that ties punitive damages to a plaintiff's loss. For example, an employer who willfully violates the ADEA by firing an employee earning $20,000 a year will pay less in total damages than one who non-willfully fires an employee earning $50,000 a year. The solution that Paolitto seeks to this perceived problem must, therefore, come from Congress, not this court.

2. Equitable Relief

■ Finally, Paolitto, who was terminated as part of a reduction in force in 1993, claims that the district court erroneously denied his motion for an equitable order appointing him to the position of Chief Structural Engineer or, in the alternative, for front pay. Paolitto's theory is that, had he been promoted in 1987, he would not have been fired in 1993. Judge Goettel denied Paolitto's motion because he had not amended his complaint to add a claim for discriminatory discharge and had not presented any theory of post-termination recovery until essentially the eve of trial. We review this denial for abuse of discretion. *See EEOC v.*

*Johnson & Higgins, Inc.*, 91 F.3d 1529, 1542 (2d Cir.1996).

We agree with Paolitto that, under the circumstances—in particular, the fact that Coleman was not terminated as part of the company-wide layoff in 1993—he need not have alleged that his termination in 1993 was discriminatory in order to recover post-termination relief. Nevertheless, we conclude that Judge Goettel acted within his discretion in denying Paolitto's motion on the ground that he had engaged in "sandbagging." Paolitto repeatedly failed to respond to Brown's interrogatories and document requests regarding his claim for damages and gave no notice prior to the very eve of trial that he was seeking post-termination relief. We see no abuse of discretion in the denial of relief based on such an eleventh-hour request.

We therefore affirm.