26 So.3d 600 (2009)
Cameshia BYRD, Appellant,
v.
BT FOODS, INC. d/b/a Wendy's Coral Springs, a Florida corporation, Appellee.
No. 4D07-5065.
District Court of Appeal of Florida, Fourth District.
December 2, 2009.
Rehearing Denied February 22, 2010.
*601 Keith M. Stern of Shavitz Law Group, P.A., Boca Raton, for appellant.
Aaron R. Resnick of the Law Offices of Aaron Resnick, P.A., Miami Beach, and Joshua B. Spector of Perlman, Yevoli & Albright, P.L., Fort Lauderdale, for appellee.
PER CURIAM.
Cameshia Byrd sued her employer, BT Foods, Inc. d/b/a Wendy's Coral Springs (BT Foods), claiming that the employer discriminated against her when it terminated her from her cashier position because she had the Human Immunodeficiency Virus (HIV). The jury found for BT Foods. In this appeal from the final judgment on the jury verdict, Byrd contends that the trial court abused its discretion in admitting into evidence the "no reasonable cause" determination letter issued by the Broward County Civil Rights Division (BCCRD). We agree and reverse.

The Factual Dispute
Byrd began working as a cashier for Wendy's Restaurant in Coral Springs in November 2003. When she was hired, she informed her supervisor, Rose Johnson, that she was HIV positive. Shortly thereafter, Johnson conveyed this information to the general manager, Lynzell Hicks, who, in turn, told one of the restaurant owners, Thomas Miko. During the seven-month period that Byrd worked at the restaurant, she often missed work due to HIV-related symptoms or side effects from her antiviral medication. However, after presenting discharge papers from her doctor or hospital, she was always allowed to return to work. This practice was consistent with BT Foods' "no call/no show" policy: an employee who fails to call or show up for work has to present a doctor's note or some similar documentation to excuse an absence.
Byrd testified that she became ill in June 2004. On June 17, 2004, she went to the office of her primary doctor, Gary Richmond, M.D. There, she was seen by the nurse, Vernon Appleby, who gave her a doctor's note so she could return to work. Appleby testified at trial, authenticating the note. Byrd testified that because she was not feeling well, she asked her former boyfriend, Gregory Handberry, to take the note to her supervisor, Rose Johnson, so she could put her back on the schedule. Handberry testified that Johnson *602 refused to accept the note, calling it a fake. The next day, Byrd went to the restaurant to personally deliver the note to Johnson. Johnson again refused it and told her that she would not be permitted to resume working until she brought in a "harder note" to place in her file. Byrd decided to speak with the general manager, Lynzell Hicks. She testified that she met with Hicks and showed him the note. During the meeting, she also spoke on the phone with the owner, Thomas Miko. According to Byrd, Miko told her to bring him proof of her HIV status. She complied by submitting her lab results. Based on her conversations with Hicks and Miko, Byrd believed that she would be allowed to return to work. She called several times and even showed up for work dressed in her Wendy's uniform, but she was not put back on the schedule. She thought she had been fired from her position.
BT Foods representatives gave a different account of Byrd's departure from Wendy's. Rose Johnson testified that Byrd did not give her a doctor's note. Instead, she gave her a small slip of paper with only a phone number on it and told Johnson that she would have to call Byrd's doctor. Johnson refused to call the doctor or accept the paper; she told Byrd to bring her a suitable doctor's note, as she had done before. Even though Byrd never produced a doctor's note, Johnson followed her general manager's instructions to place Byrd back on the work schedule for three more weeks. According to Johnson, Byrd never returned to work. She testified that Byrd was a good worker and that they would have taken her back had she brought in a doctor's note.

Procedural History

Agency Level
In August 2004, Byrd filed a charge of discrimination against BT Foods with the Broward County Civil Rights Division (BCCRD), an agency authorized to conduct investigations for the Equal Employment Opportunity Commission (EEOC). She alleged that BT Foods discharged her from her cashier position because of her HIV condition and violated the Americans with Disabilities Act of 1990, the Florida Civil Rights Act (Chapter 760), and the Broward County Human Rights Act. After completing its investigation of the charge, the BCCRD concluded that there was not reasonable cause to believe that BT Foods discriminated against Byrd based on her HIV condition. The agency issued a "Notice of Determination" letter[1] stating its finding as follows:
NOTICE OF DETERMINATION
Having examined the finding and the record presented, I conclude that there is NO REASONABLE CAUSE to believe there was a violation of the Broward County Human Rights Act or the Americans with Disabilities Act.
Attached to the notice was a document titled "Rationale for the Determination." It briefly summarized the results of the investigation and stated, in pertinent part:
RATIONALE FOR THE DETERMINATION
The Broward County Civil Rights Division has completed its investigation of *603 the above-entitled charge. The Charging Party has alleged the Respondent discriminated against her on the basis of disability in the area of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Broward County Human Rights Act. The Respondent denied it discriminated against the Charging Party and provided an answer to the charge and supporting documents. Based on this information and the results of additional investigation, including information provided by relevant witnesses, the Broward County Civil Rights Division finds no reasonable cause.
The following is the basis for this conclusion:
Reasonable Accommodation
Generally, a disabled person's requested accommodation must address a limitation caused by the disabling condition. The evidence does not indicate the Charging Party's unexcused absence from work during the third and fourth weeks of June was related to an illness associated with her physical impairment. Thus, the Respondent had no duty to excuse the Charging Party's absence as a reasonable accommodation.
Discharge
The evidence indicates that Respondent has a policy "If you NO CALL / NO SHOW, you will be required to have a note from an emergency room, etc., or you will be terminated." The evidence suggests the Charging Party provided only a phone number on a piece of paper with no doctor or clinic name. The fact the Respondent was willing to rehire the Charging Party if she produced medical verification for her absence further supports the conclusion the Respondent discharged the Charging Party because she did not produce a note from a doctor's office or hospital and not because of her medical condition.
On January 25, 2005, the EEOC issued a notice of dismissal, which summarily stated that "based upon its investigation, the EEOC is unable to conclude that the information obtained established violations of the statutes."

Trial Proceedings
After receiving the no cause letter of determination, Byrd brought suit in Broward County Circuit Court against BT Foods and owner Thomas Miko. Her amended complaint alleged HIV discrimination and contained three counts: (1) violation of the Florida Omnibus AIDS Act, section 760.50(3)(b), Florida Statutes;[2] (2) violation of the Florida Civil Rights Act, section 760.10(1)(a);[3] and (3) intentional infliction of emotional distress. The trial court entered final summary judgment in favor of the defendants on all counts. On appeal, we affirmed summary judgment as to the intentional infliction of emotional distress count and all counts against the individual defendant, Thomas Miko, but we reversed summary judgment as to the statutory claims. See Byrd v. BT Foods, Inc., 948 So.2d 921 (Fla. 4th DCA 2007).
Byrd proceeded to trial on her statutory discrimination claims. Before trial, she filed a motion in limine to preclude admission of the EEOC Dismissal and Notice of Rights and the BCCRD Notice of Dismissal *604 and Notice of Determination. She argued that these dismissal forms and the Notice of Determination were highly misleading and unduly prejudicial, and that they were too conclusory in nature to provide any meaningful probative value. She objected to the "NO REASONABLE CAUSE" statement, written in capital letters in the Notice of Determination, and expressed concern that "because these are the conclusions of a governmental agency, the jury is likely to give it more weight than is appropriate." After argument on the motion, the trial judge denied the motion and announced at the beginning of trial that he was going to allow introduction of the "EEOC finding in this case."[4]
According to Byrd, the no reasonable cause determination "became a centerpiece of BT Foods' defense from the beginning of its opening statement and throughout virtually the entire trial." For instance, at one point during closing argument, counsel for BT Foods told the jury:
[Miko] allowed his employees to meet with the EEOC investigator without an attorney and answer whatever questions they wanted. She got a chance to meet with him, Keith Stern was representing her during part of that process.
They provided all the documents you saw here today, including Nurse Appleby's note, and you know what, what did we find out? After a four-month investigation by the EEOC, no reasonable cause, and let me read to you why.
Number one, the evidence does not indicate the charging party's unexcused absence from work during the third and fourth weeks of June was related to an illness associated with an impairment. That's pretty true, because she wouldn't go to the hospital.
Discharge. The evidence indicates the respondent has a policy if you no-call/no-show, you'll be required to have a note from the emergency room or you will be terminated. The evidence suggests charging ... party provided only a phone number on a piece of paper with no doctor or clinic name. Sound familiar?
The fact the respondent was willing to rehire the charging party if she produced medical verification for her absence further supports the conclusion the respondent discharged the charging party because she did not produce a note from a doctors' office or hospital and not because of her medical condition.
In his rebuttal argument, plaintiff's counsel argued:
They talk about the EEOC. They interviewed only Rose Johnson, November 8th, 2004. You can see the records. They asked her 21 questions, 21 questions. Is that a game? Mr. Miko was never interviewed or questioned. Mr. Hicks was never interviewed or questioned. Mr. Fettner was never interviewed or questioned.
They verified that Nurse Appleby's note was correct, but they didn't do anything about it. They're not a Court, they're not a jury. A one-person investigation *605 in four months asked 21 questions. It's meaningless.
The jury returned a verdict against Byrd, finding that her employment at Wendy's was not terminated by the defendant.[5] The jury also found that Byrd was not handicapped within the meaning of the Florida Civil Rights Act.

Discussion of Legal Issues
This appeal presents an issue which appears to be one of first impression under Florida law: whether the administrative findings and conclusions of the EEOC or a similar enforcement agency are admissible in a subsequent jury trial de novo under the Florida Civil Rights Act (FCRA) or similar state statutes. The parties have relied exclusively on federal case law in their analyses. Generally, because FCRA is patterned after Title VII[6] and related federal statutes and regulations, courts construe FCRA in conformity with Title VII and the Americans with Disabilities Act (ADA).[7] However, state evidence codes control evidentiary questions presented in state court. This is so even where federal claims are litigated, unless the state rules would affect substantive federal rights. See Shotwell v. Donahoe, 207 Ariz. 287, 85 P.3d 1045, 1048 (2004) (declining to apply federal law to admissibility of EEOC determination letter).
There are two main evidentiary issues applicable to admission of EEOC determinations: 1) the hearsay nature of the determination letter, and 2) the balancing of the letter's probative value against its prejudicial effect. Federal courts have admitted EEOC determination letters despite their hearsay character under the federal public records exception to the hearsay rule. See Chandler v. Roudebush, 425 U.S. 840, 864, n. 39, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (noting that the prior administrative findings made on the plaintiff's claims of racial discrimination are admissible at trial under Fed.R.Evid. 803(8)(C)). However, Florida's public records exception under Florida Statute 90.803(8) is narrower than the federal rule in that it omits a hearsay exception for "factual findings resulting from an investigation made pursuant to authority granted by law...."[8]
*606 In this case, Byrd did not object to the hearsay nature of the no cause determination letters; she argued that the probative value of the letters was substantially outweighed by the danger of unfair prejudice under section 90.403, Florida Statutes. Section 90.403 provides, in pertinent part, that:
Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.
The federal cases cited by the parties have focused on the federal counterpart to this provision.
As previously noted, there appear to be no Florida cases on point. Federal courts afford the trial court discretion in determining whether a reasonable cause determination letter is admissible under the federal Rule 403 balancing test. See Shotwell, 85 P.3d at 1049 (surveying federal law). The Eleventh Circuit considers an EEOC determination "ordinarily admissible." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1288 (11th Cir.2008). Quoting Smith v. Universal Services, Inc., 454 F.2d 154, 157 (5th Cir.1972), the court rationalized that EEOC reports are "highly probative" due to the training and expertise of the EEOC investigators who compiled them, and that to exclude them would be "wasteful and unnecessary."
However, many federal trial courts, after more closely scrutinizing these reasonable cause determination letters, have concluded that the letters are inherently prejudicial. See Cambra v. Rest. Sch., 2005 WL 2886220 (E.D.Pa. Nov. 2, 2005) (citing cases). We agree with the reasoning of these courts that a jury may find it hard, if not impossible, to independently evaluate the evidence presented by the parties after being informed that the EEOC has already investigated the claim and determined that reasonable cause does or does not exist to believe that unlawful discrimination has occurred. As the Eleventh Circuit recognized in Barfield, admission of an EEOC report may present the danger of creating unfair prejudice in the minds of the jury, who unlike a judge, may not be aware of "the limits and vagaries of administrative determinations" and are not as equipped to assign the appropriate weight to the report. Barfield v. Orange County, 911 F.2d 644, 651 (11th Cir.1990); see also Cambra (noting that where the EEOC letter resolves credibility determinations, it treads on territory that "falls within the province of the jury," and that presenting the jury with evidence that another fact-finder found testimony not credible will "unfairly influence the jury in this determination."); Harris v. Mississippi Transp. Com'n, 2008 WL 5427795 (S.D.Miss. Dec. 30, 2008) (suggesting that the letter invades the province of the jury to determine from the evidence whether discrimination was proven and stating that "[t]he jury may give undue weight to the EEOC's conclusion, rather than determining *607 afresh from the evidence presented the ultimate issue of discrimination").
Given the evidentiary hurdles that reasonable cause determination letters face in an employment discrimination trial, these letters may seldom pass the test of admissibility. We conclude, however, that such evidentiary rulings, in the first instance, are best left to the discretion of the trial judge. In this case, we find that the trial court abused its discretion in admitting the determination letter, because the conclusory nature of the BCCRD's determination letter left it with little probative value when compared to the substantial prejudicial effect it may have had on the jury's ultimate assessment of Byrd's credibility and the pivotal determination as to whether Byrd had indeed provided a doctor's note to her employer. Moreover, we cannot say that the erroneous admission of the BCCRD's determination letter was harmless. Several courts have reasoned that similar conclusory administrative determination letters, i.e., those which do little more than take sides, enjoy particularly low probative value, but possess especially high dangers of unfair prejudice. See, e.g., Rudy v. Miami-Dade County, 15 Fla. L. Weekly Fed. D124, 2002 WL 368599 (S.D.Fla. Feb. 5, 2002); Abebe v. City of Waterloo, Iowa, No. C98-2074 MJM, 2000 WL 34030862 (N.D.Iowa Sept. 7, 2000); Lee v. Executive Airlines, Inc., 31 F.Supp.2d 1355 (S.D.Fla.1998). Such was the case here, and Byrd's pre-trial motion in limine, pursuant to Florida Statute section 90.803, should have been granted.
Accordingly, we reverse and remand this cause for a new trial.
Reversed and Remanded.
STEVENSON J., concurs.
TAYLOR, J., concurs in result with opinion.
MAY, J., concurs in part and dissents in part with opinion.
TAYLOR, J., concurring in result.
I agree that the trial court reversibly erred in admitting the no reasonable cause letter in this case because its minimal probative value was substantially outweighed by its potential for prejudice. However, I would go further and rule that such determination letters are per se inadmissible in employment discrimination jury trials.
Although federal circuit courts usually leave the decision whether to admit these determination letters to the trial courts, I see no point in requiring courts to make a case-by-case assessment of their admissibility. The low probative value of these letters will invariably be outweighed by the unfair prejudice, confusion, and delay that will result from their admission. For that reason, we should decline to follow the federal courts' balancing approach and opt instead for a per se rule that will result in uniform decisions on these letters. Applying a "bright line" rule that removes these letters from the jury's consideration is preferable, in my view, because the EEOC's opinion on whether an employer has discriminated against a plaintiff creates insurmountable prejudice in the minds of the jury.
Moreover, I am not persuaded by the reasoning of some federal courts that the training and expertise of EEOC investigators make their determinations highly probative. On the contrary, perceptions about the agency's authority and superior knowledge render its reports highly prejudicial. A report from the EEOC that discrimination has or has not occurred will unfairly influence the jury in deciding that ultimate question. Allowing the report into evidence amounts to "admitting the *608 opinion of an expert witness as to what conclusions the jury should draw, even though the jury had the opportunity and the ability to draw its own conclusions from the evidence presented." Cambra v. Rest. Sch., No. Civ. A 04-2688, 2005 WL 2886220 (E.D.Pa. Nov. 2, 2005) (quoting Johnson v. Yellow Freight System, Inc., 734 F.2d 1304, 1309 (8th Cir.1984)); see also Rudy v. Miami-Dade County, 15 Fla. L. Weekly Fed. D124, 2002 WL 368599 (S.D.Fla. Feb. 5, 2002). Indeed, the Eleventh Circuit acknowledged this potential for prejudice in Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1288 (11th Cir. 2008). There, although the court approved admission of the EEOC determination letter, it noted that the district court was careful to explain to the jury the purpose and character of an EEOC determination and "instructed the jury to guard against the improper use of this evidence." Id.
Another reason to exclude reasonable cause determination letters is that their admission often results in undue delay and waste of time. These are additional factors that courts must consider in a Rule 403 balancing analysis. See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1346-47 (3d Cir.2002) (finding that the trial court properly excluded the EEOC determination after weighing undue delay and waste of time against its low probative value). EEOC reasonable cause letters generally repeat many of the facts that both parties will attempt to prove at trial. Cambra, 2005 WL 2886220 at *4. When an EEOC determination letter is admitted, the party with the unfavorable result must spend considerable time and effort challenging the basis for the investigator's opinions and conclusions. "This will result in a significant trial within a trial that will include a comparison of the evidence considered by the EEOC and the evidence submitted at trial, an attack on the conclusions reached, and presentation of the different standards that might be applicable." McNeal v. Kans. City Ry., No. 05CV791, 2007 WL 1237934 at *2 (W.D.La. April 27, 2007). "The `trial' of the EEOC determination letter would be an undue waste of time, and it would present significant opportunity for juror confusion." Id.
Furthermore, the Florida Civil Rights Act provides some support for adoption of a per se rule of inadmissibility of reasonable cause determination letters. The Act contains a provision which states that "[t]he commission's determination of reasonable cause is not admissible into evidence in any civil proceeding, including any hearing or trial, except to establish for the court the right to maintain the private right of action." See § 760.11(5), Fla. Stat. (2008). I believe that this provision in our civil rights law reflects the legislature's intent that a trial be a fresh re-examination of the facts surrounding a claim of discrimination, independent of the agency's findings.[9]
Because I agree with the majority that the trial court erred in admitting the no reasonable cause determination letters in this case, I concur in the reversal and remand of this cause for a new trial.
*609 MAY, J., concurring in part and dissenting in part.
I concur in the majority's conclusion that rulings on the admissibility of reasonable cause determination letters in employment discrimination cases are best left to the discretion of the trial judge, who has the unique vantage point to weigh the competing factors of probative value and prejudicial effect. This is particularly important as the facts and circumstances of each case will vary greatly. I dissent however from the majority's conclusion that the trial court abused its discretion in admitting the letter in this case.
Most federal circuits have adopted the moderate approach of allowing the trial court discretion when determining the admissibility of determination letters. See, e.g., Davignon v. Hodgson, 524 F.3d 91, 112-13 (1st Cir.2008); Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1018 (7th Cir.2000); Paolitto v. John Brown E. & C., Inc., 151 F.3d 60, 63-66 (2d Cir.1998); Williams v. Nashville Network, 132 F.3d 1123, 1129 (6th Cir.1997); EEOC v. Manville Sales Corp., 27 F.3d 1089, 1095 (5th Cir.1994); Hall v. W. Prod. Co., 988 F.2d 1050, 1057-58 (10th Cir.1993); Johnson v. Yellow Freight Sys., Inc., 734 F.2d 1304, 1309-10 (8th Cir.1984); Walton v. Eaton Corp., 563 F.2d 66, 75 (3d Cir.1977). Those courts that have addressed the issue, as it relates to reasonable or probable cause determinations, have likewise allowed trial courts the same discretion. See, e.g., Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1288 (11th Cir.2008); Tulloss v. Near N. Montessori Sch., Inc., 776 F.2d 150, 153-54 (7th Cir.1985); Cox v. Babcock & Wilcox Co., 471 F.2d 13, 15 (4th Cir.1972); Smith v. Universal Servs., Inc., 454 F.2d 154 (5th Cir.1972).
Similarly, state courts that have addressed the issue have come down on the side of discretion and have avoided a bright line rule of either admissibility or inadmissibility. See, e.g., Shotwell v. Donahoe, 207 Ariz. 287, 85 P.3d 1045 (2004); Cantu v. City of Seattle, 51 Wash.App. 95, 752 P.2d 390, 391-92 (1988); Michail v. Fluor Mining & Metals, Inc., 180 Cal. App.3d 284, 225 Cal.Rptr. 403 (1986). And, they have done so based upon good authority, the Supreme Court of the United States. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) ("[P]ortions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report.").
Given that standard, I cannot agree that the trial court abused its discretion in this case. Section 90.803, Florida Statutes (2008), provides for the admission of a determination letter as a public record unless there is a showing of untrustworthiness. There was no such showing in this case. In fact, the plaintiff admitted most of the file generated by the administrative proceeding. It objected only to the admission of the determination letter.
In addition, the majority overlooks a significant reality in this casethe admission of the determination letter was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Here, the determination letter contained the following information.
RATIONALE FOR THE DETERMINATION
The Broward County Civil Rights Division has completed its investigation of the above-entitled charge. The Charging party has alleged the Respondent discriminated against her on the basis of *610 disability in the area of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Broward County Human Rights Act. The Respondent denied it discriminated against the Charging Party and provided an answer to the charge and supporting documents. Based on this information and the results of additional investigation, including information provided by relevant witnesses, the Broward County civil Rights Division finds no reasonable cause.
The following is the basis for this conclusion:
Reasonable Accommodation
Generally, a disabled person's requested accommodation must address a limitation caused by the disabling condition. The evidence does not indicate the charging Party's unexcused absence from work during the third and fourth weeks of June was related to an illness associated with her physical impairment. Thus, the Respondent had no duty to excuse the Charging Party's absence as a reasonable accommodation.
Discharge
The evidence indicates the Respondent has a policy "If you NO CALL/NO SHOW, you will be required to have a note from an emergency room, etc., or you will be terminated." The evidence suggests the Charging Party provided only a phone number on a piece of paper with no doctor or clinic name. The fact the Respondent was willing to rehire the Charging Party if she produced medical verification for her absence further supports the conclusion the Respondent discharged the Charging Party because she did not produce a note from a doctor's office or hospital and not because of her medical condition.
(Emphasis added). The determination letter concludes that the employer discharged the employee because she did not produce a note from a doctor's office as required by the employer's "NO CALL/NO SHOW" policy. Yet, the jury actually found that the employer had not terminated the employee. The first question on the verdict form asked the following:
1. That CAMESHIA BYRD's employment at Wendy's Coral Springs was terminated by the Defendant?
The jury answered "NO." Thus, it is difficult, if not impossible, to conclude that the admission of the determination letter affected the jury's verdict because it came to the completely opposite conclusion.
For these reasons, I concur in part and dissent in part. I concur in the adoption of the abuse of discretion standard as it applies to the admission of determination letters. Using this standard, I find no abuse of discretion and would affirm the final judgment.
NOTES
[1] 29 C.F.R. § 1601.19(a) provides that: "Where the Commission completes its investigation of a charge and finds that there is not reasonable cause to believe that an unlawful employment practice has occurred or is occurring as to all issues addressed in the determination, the Commission shall issue a letter of determination to all parties to the charge indicating the finding. The Commission's letter of determination shall be the final determination of the Commission."
[2] The Florida Omnibus Aids Act, Fla. Stat. § 760.50, prohibits employers from discharging an employee or otherwise discriminating against any employee on the basis of knowledge or a belief that the employee has HIV.
[3] The Florida Civil Rights Act, Fla. Stat. § 760.01 et seq., prohibits employers from discharging or otherwise discriminating against any employee with a "handicap" because of the employee's "handicap."
[4] We reject BT Foods' position that Byrd failed to preserve this issue by later stipulating to admission of the entire EEOC file, including the determination letters. See Sheffield v. Superior Ins. Co., 800 So.2d 197 (Fla. 2001) (holding that "once a trial court makes an unequivocal ruling admitting evidence over a movant's motion in limine, the movant's subsequent introduction of that evidence does not constitute a waiver of the error for appellate review"). However, because the trial court's ruling was limited to allowing admission of the EEOC's findings or determination from its investigation, Byrd's failure to make contemporaneous objections when other portions of the EEOC file were introduced at trial waived any error for appellate review as to those documents.
[5] The employer's position appears to have shifted between the EEOC proceeding and the civil trial. While the EEOC interpreted the employer as having discharged Byrd for cause due to her failure to provide a note, the jury was persuaded that her failure to return to work with a doctor's note meant that Byrd quit her employment. However, it is clear that both found for the employer based on the central foundational issue of whether Byrd, in fact, provided the doctor's note. Because the EEOC's rejection of Byrd's position may very well have influenced the jury on this critical issue, we cannot conclude that the erroneous introduction of the EEOC determination letter was harmless.
[6] Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2003-2003-17; see also Vickers v. Fed. Express Corp., 132 F.Supp.2d 1371 (S.D.Fla.2000).
[7] See Tourville v. Securex, Inc., 769 So.2d 491, 492 n. 1 (Fla. 4th DCA 2000); McCaw Cellular Cmmc'ns of Fla., Inc. v. Kwiatek, 763 So.2d 1063 (Fla. 4th DCA 1999).
[8] Federal Rule of Evidence 803 states:

(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
(emphasis added).
Florida Statutes Section 90.803 provides:
(8) Public records and reports.Records, reports, statements reduced to writing, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report, excluding in criminal cases matters observed by a police officer or other law enforcement personnel, unless the sources of information or other circumstances show their lack of trustworthiness. The criminal case exclusion shall not apply to an affidavit otherwise admissible under s. 316.1934 or s. 327.354.
[9] The FCRA does not have a per se rule on inadmissibility for a "no reasonable cause" determination. But this can be attributed to the Act's unique structure providing that "no reasonable cause" determinations will be decided only administratively and not become subject to a subsequent jury trial. However, as the unique facts of this case demonstrate, where multiple statutory rights are sought simultaneously, that design may not always hold true. Had the legislature contemplated this situation, it probably would have adopted the same per se rule of exclusion for "no reasonable cause" determinations that it provided for "reasonable cause" determinations, as a matter of fairness to the parties.