Donald K. HALL, Plaintiff–Appellee,

v.

WESTERN PRODUCTION COMPANY,
Defendant–Appellant.

No. 91–8059.

United States Court of Appeals,
Tenth Circuit.

March 16, 1993.

Jane A. Villemez of Graves, Santini & Villemez, P.C., Cheyenne, WY, for plaintiff-appellee.

John K. Nooney of Morrill Brown & Thomas, Rapid City, SD, for defendant-appellant.

Before ANDERSON, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and GIBSON, Senior Circuit Judge, Eighth Circuit.[*]

McWILLIAMS, Senior Circuit Judge.

On January 31, 1989, Donald K. Hall, an employee of Western Production Company (Western), was discharged from his employment. After his discharge, Hall filed a complaint against Western with the Equal Employment Opportunity Commission and the Wyoming Fair Employment Commission (WFEC), asserting that his discharge violated the Age Discrimination in Employment Act (ADEA). WFEC investigated the matter and subsequently dismissed the complaint.

Hall then brought the present action against Western in the United States District Court for the District of Wyoming. After setting forth the operative facts common to both of his claims, Hall alleged as his first claim for relief a violation of the ADEA, 29 U.S.C. § 623 (1985), and as his second and pendent claim, he alleged a breach of an employment contract.

---

[*] Honorable Floyd R. Gibson, Senior Judge, U.S. Court of Appeals, Eighth Circuit, sitting by designation.

Trial of the case was to a jury. In response to special interrogatories, the jury found as follows: (1) Western discriminated against Hall because of his age, in violation of 29 U.S.C. § 623; (2) Hall sustained no damages as a result of this violation; (3) Western's violation of 29 U.S.C. § 623 was not "willful"; (4) Hall had an employment contract with Western; (5) Western breached this employment contract; and (6) the amount of money damages for this breach, "which does not duplicate any award previously given," was $41,793.00.

In accordance with the jury's verdict, the district court entered judgment in favor of Hall and against Western in the amount of $41,793.00. On motion, the district court also ordered that Hall recover attorney's fees of $30,025.00 and costs of $4,501.79. Western appeals these judgments.

On appeal, Western urges five matters: (1) absent a definite term of employment, Hall's employment with Western was terminable at will, and hence the district court erred in denying Western's motion for a directed verdict and its motion for judgment notwithstanding the verdict on Hall's breach of contract claim; (2) absent evidence that Western's decision to discharge Hall was pretextual to age discrimination, the district court erred in not directing a verdict on Hall's ADEA claim; (3) in view of the fact that the jury awarded Hall no money damages on his ADEA claim, Hall was not the "prevailing party," and the district court erred in awarding him attorney's fees; (4) the district court erred in refusing Western's request to submit into evidence the WFEC determination that Hall was not discharged because of his age; and (5) jury instructions numbered 15 and 22 incorrectly stated the law and misled the jury, which prejudiced Western. A brief recital of background facts will place these matters in focus.

Western is an oil and gas producer operating primarily in the Finn–Shurley Field in Weston County, Wyoming. In the fall of 1988, Western's daily operations were under the direction of Doran Newlin, who was 35 years old and had worked for Western for some nine years, advancing to the position of field superintendent in charge of all of Western's wells. In the fall of 1988, Western was exploring the possibility of acquiring certain assets of TOCO Corporation. TOCO, like Western, was an operator of oil and gas wells in the Finn–Shurley Field, although on a smaller scale. Since both companies were operating in the Finn–Shurley Field, Western thought that certain of TOCO's assets could be integrated into its operation.

Donald K. Hall, age 64, was TOCO's field superintendent. Western's interest in TOCO became known to TOCO's employees, who, in turn, became concerned about their future employment should the acquisition be consummated. Hall, on behalf of himself and other TOCO employees, had a telephone conversation in November, 1988, with John Paulson, Western's president, concerning the future employment of TOCO's employees should the acquisition occur. The details of this conversation will be discussed later. A few days after Hall's telephone conversation with Paulson, Doran Newlin, Western's field superintendent, talked with TOCO's employees about their future employment with Western. Again, the details of this meeting will be discussed later.

In late December, 1988, Western and TOCO entered into an agreement whereby TOCO agreed to sell and Western agreed to buy certain of TOCO's assets consisting of equipment, wells, and leases. All of TOCO's employees, except for two members of the office staff and Hall, began working for Western as of January 1, 1989. On that date, Hall was on a three-week vacation which ended on January 15, 1989. One week of Hall's vacation occurred before the acquisition, and he was paid for that week by TOCO. Western paid Hall for the last two weeks of his vacation at the pay rate he was receiving as TOCO's field superintendent.

On January 16, 1989, Hall appeared at Western's offices prepared to continue as field superintendent for the TOCO properties acquired by Western. At this time, however, Hall was informed by Newlin

that there had been a change of plans and that he (Newlin) was going to be the field superintendent for all of Western's properties. Hall was then presented an offer to work for Western as a tank strapper. After considering this alternative, Hall declined the position of tank strapper, and Western discharged him by letter on January 31, 1989.

## BREACH OF CONTRACT

 Apparently, Hall had no employment contract for a definite term with TOCO, and he agrees that his employment with TOCO was at will, which, under Wyoming law, meant that either he or TOCO could terminate the employment relationship at any time without notice or reason. *Nelson v. Crimson Enterprises, Inc.*, 777 P.2d 73, 75 (Wyo.1989); *Allen v. Safeway Stores, Inc.*, 699 P.2d 277, 282 (Wyo.1985); *Rompf v. John Q. Hammons Hotels, Inc.*, 685 P.2d 25, 27–28 (Wyo.1984). Both parties recognize that a definite term must exist in an employment contract to remove an employee's at-will status. *Allen,* 699 P.2d at 282. In this regard, Western asserts that any employment contract which may have existed between it and Hall also did not have a definite term of employment and, accordingly, that Hall was an at-will employee, and either party could terminate the contract without notice or reason.

At the conclusion of Hall's evidence, Western moved for a directed verdict on the breach of contract claim on the ground that Hall's employment contract with Western was terminable at will. This motion was denied, as was Western's renewed motion for a directed verdict at the conclusion of all the evidence. Western's motion for judgment notwithstanding the verdict on the breach of contract claim was similarly denied. In denying Western's motion for judgment notwithstanding the verdict, the district court stated:

> Defendant's motion rests on a perceived lack of evidence to establish the existence of a definite term of employment. Indeed, without a definite term of employment, an employee or employer can end the relationship at any time for

any reason without breaching the "employment contract." ... Defendant contends that "[i]t was uncontroverted Hall did not have a definite term of employment with Western ... and thus plaintiff could be fired at any time. In light of this, defendant contends, substantial evidence was not presented to support the conclusion that plaintiff had a contract of employment which could have been breached by defendant's actions of firing plaintiff without cause.

> There is some dispute over the role plaintiff was to play in defendant's operations. *However, whatever plaintiff's role in the organization was going to be, all indications were that plaintiff would be in that position at least until his anticipated retirement in September, 1989.* The evidence reasonably supports a conclusion that these indications went beyond the parties' "[s]ubjective understandings and expectations."

(citations omitted) (emphasis added).

The general rule regarding a motion for directed verdict or a motion for judgment notwithstanding the verdict, i.e., when they should be granted and when they should be denied, is not here in dispute. The dispute arises when the general rule is applied to the facts of the instant case. In this connection, in *Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 680 (10th Cir.1981), we observed that:

> [w]hen faced with a motion for judgment notwithstanding the verdict, the standards by which the prerequisite motion for directed verdict is judged control.... Judgment notwithstanding the verdict may only be granted where the evidence "points all one way and is susceptible of no reasonable inferences that sustain the position of the party against whom the motion is made." ... A mere scintilla of evidence is insufficient to justify the denial of the motion. However, since the grant of such a motion deprives the non-moving party of a determination of the facts by a jury, judgment notwithstanding the verdict should be cautiously and sparingly granted.

(citations omitted).

 Regarding his breach of contract claim, Hall's theory of the case is that his

employment contract with Western was for a definite term and was not terminable at will. Hall testified that his understanding of the matter—an understanding which he said was based on statements made by Paulson in their telephone conversation and on statements made by Newlin to TOCO employees—was that after the acquisition, he (Hall) would serve as field superintendent for the TOCO properties acquired by Western and would continue to serve as such at least until September, 1989, at which time, as all parties knew, he was contemplating retirement.

■ Under Wyoming law, Hall's subjective understanding of a definite term is insufficient, *Allen*, 699 P.2d at 282; what is required is a mutual understanding between the parties that a definite term exists, *id.* at 281, 282. In our view, there is sufficient evidence, both direct and circumstantial, of such a mutual understanding as to require submission of the question to the jury and to support its verdict. Hall was a long-time employee of TOCO and, as stated, was field superintendent for TOCO's property in the Finn–Shurley Field. Based on Hall's telephone conversation with Paulson and Newlin's statements at the meeting of TOCO's employees, there is ample evidence to indicate that Western intended to have TOCO's employees continue to operate the TOCO property Western acquired, and, specifically, that Hall would continue to serve as field superintendent of these acquired properties. In this regard, all but two of TOCO's employees began working for Western as of January 1, 1989. Further, it is undisputed that at the time of the acquisition Western's representatives knew that Hall was contemplating retirement in September, 1989. Hall testified that he was told that Newlin would follow him around and learn his duties, and, presumably, "take over" when Hall retired. Notes made by Newlin at the time indicate that employment "decisions were based on the idea of Don Hall wanting to retire in September, 1989."

When Hall returned from his vacation and presented himself for work on January 16, 1989, fully expecting to be field superin-

tendent of the newly acquired TOCO properties, Hall testified that Newlin informed him that in his absence there had been a "change in plans." The change, of course, was that Newlin was to take over as field superintendent of the newly acquired TOCO properties at once, and that Hall would be offered a lesser assignment at a lesser pay rate. Further, the tank strapping position Western offered Hall, which Hall refused, would have been completed by September, 1989, permitting the inference that Western felt bound by its agreement to employ Hall at least until September, 1989.

Instructions given the jury defined an at-will employment contract and an employment contract for a definite term and instructed the jury that Hall could only recover on his breach of contract claim if he proved by a preponderance of the evidence that he had a contract of employment with Western for a definite term. We agree with the district court that there was sufficient evidence to require submission to the jury of the question of whether Hall's employment contract with Western was at will or for a definite term. It follows that there is sufficient evidence in the record to support the jury's verdict.

## AGE DISCRIMINATION

Western also contends on appeal that there was no evidence to show that its employment decisions pertaining to Hall were pretextual and that Hall failed to prove that such decisions were in any part motivated by age discrimination. In thus arguing, Western concedes that Hall established 3 of the 4 required *prima facie* elements, *see Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir.1988), namely that he was within a protected age group, that he was adversely affected by Western's employment decision, and that he was qualified for the position at issue. However, Western asserts that there was no evidence that Hall was replaced by a person outside the protected age group. *Id.* In this regard, Western states that the evidence showed that Western never intended to operate TOCO's acquired proper-

ties with Hall as the field superintendent and that at all times it intended to integrate TOCO properties into its own with Newlin as the field superintendent.

■ In our view, however, there was evidence to the contrary. For example, when Hall returned from his vacation ready to take over as field superintendent of TOCO's old properties, he testified that Newlin advised him that there had been a "change in plans," and Hall, age 64, was abruptly replaced by Newlin, age 35, as field superintendent of the acquired TOCO properties. To assist Newlin with his new and increased duties, Western created several new supervisory positions. However, none of these new positions was offered to Hall, and all were filled by men much younger than Hall. Hall was offered the lesser paying job of tank strapper, which he felt was demeaning for a man with 40 years of experience in the oil fields and too demanding for a man of his age. We think that the requirements of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–07, 93 S.Ct. 1817, 1824–27, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–60, 101 S.Ct. 1089, 1093–97, 67 L.Ed.2d 207 (1981), concerning the evidence the plaintiff must present in order to carry his burdens of proof to prove age discrimination, were met. The question of age discrimination was properly submitted to the jury.

## ATTORNEY'S FEE

The district court, on motion, awarded Hall the sum of $30,025 as attorney's fees.[1] As indicated, the jury, by answer to a special interrogatory, found that Western had discriminated against Hall because of his age, in violation of 29 U.S.C. § 623. However, counsel argues that because the jury awarded Hall zero damages on his age discrimination claim, Hall was not the "prevailing party" on that claim. We disagree.

■ A plaintiff is a prevailing party "[i]f the plaintiff has succeeded on 'any significant issue in litigation which

achieve[d] some of the benefits the parties sought in bringing the suit'." *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)); *see also Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987) (noting that "a plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail"); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau*, 581 F.2d at 278–79). At a minimum, therefore, in order to prevail, the plaintiff must show that the "legal relationship between itself and the defendant" has changed. *Garland*, 489 U.S. at 792, 109 S.Ct. at 1493; *see also Hewitt*, 482 U.S. at 761–62, 107 S.Ct. at 2676–77. The legal relationship between the parties changes when the plaintiff receives "[a] judgement for damages in any amount, whether compensatory or nominal." *Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992). Thus, "a plaintiff who wins nominal damages is a prevailing party." *Id.* —— U.S. at ——, 113 S.Ct. at 573. In the instant case, the fact that the jury found that Western had discriminated against Hall because of his age means to us that Hall was the "prevailing party" on his claim of age discrimination.

We do recognize that although under *Farrar*, a plaintiff who is awarded only nominal damages, in that case $1.00, may still be the prevailing party, he would nonetheless not be entitled to an award of attorney's fees because he received only nominal damages. However, the instant case is different.

Based on the same operative facts, Hall not only asserted an age discrimination claim, but also asserted a pendent state claim based on breach of contract. By special interrogatory, the jury found that Hall had prevailed on both claims. Further, the jury was instructed, in effect, that although it could find for Hall against

---

**1.** By reference to the Fair Labor Standards Act (29 U.S.C. § 216(b)), the ADEA provides for an award of attorney's fees and costs to a prevailing party. 29 U.S.C. § 626(b).

Western on *both* of his claims, i.e. age discrimination and breach of contract, it could not award "duplicative" damages. It was in this setting that, while the jury found for Hall on both his claims, it awarded Hall zero damages on his age discrimination claim, but at the same time awarded Hall $41,793.00 on his breach of contract claim. In such circumstance, we believe an award of attorney's fees to Hall was proper.

In support of our holding that Hall is entitled to an award of attorney's fees, *see Carreras v. City of Anaheim*, 768 F.2d 1039 (9th Cir.1985). In that case, the plaintiffs brought suit under 42 U.S.C. § 1983 in the United States District Court for the Central District of California against the City of Anaheim, challenging the constitutionality of the City's ordinance requiring persons soliciting within the city limits to obtain a permit. After a bench trial, the district court held as follows: (1) that the City could constitutionally prohibit the plaintiffs from soliciting donations in the parking areas and pedestrian walkways outside Anaheim Stadium; (2) that the City could not prohibit the plaintiffs from soliciting donations on the exterior walkways of the Anaheim Convention Center; (3) that the ordinance in question was not unconstitutional on its face; and (4) that the plaintiffs were not prevailing parties entitled to attorney's fees under 42 U.S.C. § 1988. *Id.* at 1041.

A reading of *Carreras* does not disclose whether the district court based its ruling on the United States Constitution or the Constitution of the State of California. In this regard, plaintiffs had alleged violations of both the federal and state constitutions. It is quite clear, however, that the Ninth Circuit, on appeal, first considered whether the ordinance violated the state constitution, stating that if the ordinance violated the state constitution, it need not consider whether the ordinance violated the federal Constitution. *Id.* at 1042–43.

On appeal, the Ninth Circuit in *Carreras* ruled as follows: (1) that the City under the state constitution could not restrict solicitations at either the stadium or the con-

vention center; (2) that the ordinance on its face violated the state constitution; and (3) that the plaintiffs, as prevailing parties, were entitled to an award of attorney's fees under 42 U.S.C. § 1988. *Id.* at 1050.

So, in *Carreras*, the plaintiffs ultimately, i.e. in the circuit court, though perhaps not in the district court, prevailed on "pendent [state] constitutional claims," and in that circumstance the Ninth Circuit did not reach plaintiffs' further claim that the City violated federal constitutional rights. Notwithstanding this, the Ninth Circuit held that under 42 U.S.C. § 1988 the plaintiffs were prevailing parties and as such were entitled to attorney's fees. In thus holding, the Ninth Circuit spoke as follows:

That we base our decision on ISK-CON's [plaintiffs'] pendent state constitutional claims does not affect our determination that fees are appropriate. *When the plaintiff in a civil rights action prevails on a pendent state claim based on a common nucleus of operative fact with a substantial federal claim, fees may be awarded under § 1988. See Gagne v. Maher*, 594 F.2d 336, 339–40 (2d Cir.1979); *Lund v. Affleck*, 587 F.2d 75, 76–77 (1st Cir.1978); *cf. Bartholomew v. Watson*, 665 F.2d 910, 912–14 (9th Cir.1982) (allowing fees under § 1988 for work done on federal claim in state court as a result of *Pullman* absention by federal district court).

*Id.* (emphasis added).

In the instant case, Hall prevailed not only on his pendent state claim, i.e. breach of contract, which was based "on a common nucleus of operative fact with a substantial federal claim," but he also prevailed on his federal age discrimination claim, and, in connection therewith, the jury had been instructed, in effect, that it could not give "duplicative" damages for the two claims.

In a later case, *Mateyko v. Felix*, 924 F.2d 824 (9th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991), the Ninth Circuit had occasion to make reference to *Carreras*. In *Mateyko*, the plaintiff brought suit under 42 U.S.C. § 1983 against the City of Los Angeles and

certain of its police officers, alleging that in affecting his arrest the defendants used unnecessary force and in so doing violated federally protected rights. The plaintiff also asserted pendent state claims for assault, battery, negligence and emotional distress. At trial, the district court directed a verdict for the defendants on the plaintiff's § 1983 claim and the various state claims were submitted to the jury. The jury found for the defendants on all of the pendent state claims except plaintiff's claim for negligent infliction of emotional distress. On this latter claim, judgment was eventually entered for $19,680.

On appeal, Mateyko challenged the directed verdict on his § 1983 claim, and the Ninth Circuit affirmed. The Ninth Circuit then went on to reject other challenges to various rulings of the district court.

The district court also awarded certain costs to the defendants, and Mateyko challenged the propriety of such order, asserting that since he prevailed on one of the pendent state claims, the defendants were not prevailing parties, and that in reality he was the prevailing party, and as such, he was entitled to costs and attorney's fees. In rejecting this argument, the Ninth Circuit held that since Mateyko lost on all of his federal claims and made recovery only on a pendent state claim, he was not the prevailing party under 42 U.S.C. § 1988 and was not entitled to costs or attorney's fees. *Id.* at 828.

It was in this setting that the Ninth Circuit in *Mateyko* opined that *Carreras* "is not to the contrary." *Id.* In thus concluding, the Ninth Circuit noted that in *Carreras*, the plaintiffs' federal claims were not reached because the plaintiffs prevailed on state constitutional grounds, whereas in *Mateyko*, the plaintiff's federal claims were decided against him. In the instant case, as previously indicated, Hall prevailed on his federal age discrimination claim, as well as his pendent state claim. Thus, he is entitled to an award of attorney's fees as the prevailing party.

██ Western argues, alternatively, that if an award of attorney's fees was proper, the award of $30,025 was excessive. In

this regard, as we understand it, Western does not challenge the district court's calculation of attorney's fees, i.e., hours spent times hourly charge, but Western does reiterate its argument that since Hall was awarded zero damages on his ADEA claim, the attorney's fees should have at least been reduced, if not disallowed. As we have previously stated, the fact that the jury awarded Hall zero damages on his age discrimination claim does not, under the unique circumstances of the present case, rule out attorney's fees.

The amount of an award of attorney's fees is within the discretion of the district court, and the appellate court reviews the award for abuse of discretion. *Nephew v. City of Aurora*, 830 F.2d 1547, 1550 (10th Cir.1987) (en banc), *cert. denied*, 485 U.S. 976, 108 S.Ct. 1269, 99 L.Ed.2d 481 (1988). Even under this standard of review, great weight is given to the district court's determination of an appropriate fee. *Hernandez v. George*, 793 F.2d 264, 268 (10th Cir.1986). We note that in the instant case, Hall sought attorney's fees of $34,528.75 plus costs, but the district court reduced this and awarded him $30,025 in attorney's fees and costs of $4,501.79. We are not inclined to disturb the district court's determination of an appropriate fee.

## EXCLUSION OF THE WFEC REPORT

██ As indicated, the WFEC dismissed Hall's claim of discrimination, and, at trial, Western sought to introduce the WFEC report, which found no age discrimination, into evidence. The district court, *in limine*, rejected Western's offer and, on appeal, Western argues that such constitutes reversible error. We disagree.

The parties agree that whether a report of this nature should be admitted into evidence at trial is a matter resting within the sound discretion of the district court. *Perrin v. Anderson*, 784 F.2d 1040, 1046–47 (10th Cir.1986). Thus, the standard of review is abuse of discretion. *Id.* at 1047. This court has held that, in civil actions, agency reports are admissible under Fed. R.Evid. 803(8)(C) if they are prepared pur-

suant to authority granted to the agency by law and are trustworthy. *Id.* (holding that it was not error for the district court to admit a report of the Shooting Review Board); *see also Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 820–22 (10th Cir.1981) (holding that it was not error for the district court to refuse to admit a report of the Colorado Civil Rights Commission because the report was not trustworthy and there was a possibility that the report would prejudice the jury). This rule covers both factual findings and "conclusions and opinions found in evaluative reports of public agencies." *Perrin,* 784 F.2d at 1047.

 Notwithstanding this rule, pursuant to Fed.R.Evid. 403, the district court is granted discretion to determine when otherwise relevant, thus admissible, evidence should be excluded. When evidence is excluded under Fed.R.Evid. 403, the standard of review is still abuse of discretion. *Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1011 (10th Cir.1992).

In refusing to admit the WFEC report into evidence, the district court determined that all the evidentiary matter before the WFEC could be presented to the jury in some other form or fashion, and, therefore, the only purpose to be served by admitting into evidence the WFEC report "would be to suggest to the jury that it should reach the same conclusion" as the WFEC. The district court further determined "that the risk of unfair prejudice to the plaintiff substantially outweighs any relevance of the WFEC findings of fact and conclusions of law." We find no abuse of discretion in this determination.

### INSTRUCTIONS NOS. 15 AND 22

 The appellate court reviews the jury instructions as a whole, not by reviewing single jury instructions. *United States v. Denny,* 939 F.2d 1449, 1454 (10th Cir. 1991) (citing *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973)). The appellate court then determines whether these instructions "fairly, adequately and correctly state[d] the governing law and provide[d] the jury

with an ample understanding of the applicable principles of law." *Denny,* 939 F.2d at 1454. When instructions nos. 15 and 22 are read in their entirety, and are considered with the other instructions given the jury, we find no error.

 Instruction no. 15 concerned Hall's age discrimination claim. Western argues that it permitted the jury to find for Hall if he simply made a *prima facie* showing of age discrimination. Contrary to Western's contention, this instruction did not permit the jury to find for the plaintiff once the four *prima facie* elements were met. The jury was instructed that they not only must find that the four *prima facie* elements were established but that age was a determining factor in Hall's discharge. Thus, the first step the jury had to take was to determine whether Hall established a *prima facie* case of age discrimination. The second step the jury had to take was to find that age was determinative in Western's discharge of Hall. As to this second step, the jury was instructed as follows: "In order for you to find for the plaintiff, the plaintiff *must* prove by a preponderance of the evidence that his age was a determining factor in the defendant's employment decision to discharge him." (emphasis added)

The remainder of instruction no. 15 tracks the burdens of proof each party must bear and informs the jury when they *must* find for either the plaintiff or the defendant. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–07, 93 S.Ct. 1817, 1824–27, 36 L.Ed.2d 668 (1973). Indeed, instruction no. 15 provides that if Western produced evidence "of a reason other than age for its employment decision," the jury must find for Western unless such was not the "true reason." Read in its entirety, instruction no. 15 adequately informed the jury of the applicable law concerning the ADEA violation.

 Instruction no. 22 concerned Hall's breach of contract claim. It stated that an "at will employee who does not have an employment contract may be discharged at any time for any reason or for no reason."

Western argues that this instruction implied that an at-will employee with an employment contract could not be terminated without the employer incurring liability. However, instruction no. 23 went on to instruct the jury that "absent the establishment of a definite term of employment, a contract is one terminable at will." In our view, this instruction clears up any possible ambiguity in instruction no. 22. Thus, the jury instructions, taken as a whole, adequately instructed the jury as to Wyoming's law concerning at-will employment relationships.

### CONCLUSION

Since the district court did not commit any reversible errors, the judgement below is AFFIRMED.