**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 28, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICIA G. WHITE,

> Plaintiff - Appellant,

v.

STATE OF OKLAHOMA,

> Defendant - Appellee.

No. 13-5142
(N.D. Okla.)
(D.C. No. 4:12-CV-00088-GKF-FHM)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff and appellant, Patricia G. White, appeals the grant of summary judgment to the defendant, the State of Oklahoma ("State"), in her discrimination

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

case following her termination from work. For the following reasons, we affirm the district court's decision.

## BACKGROUND

On or about June 1, 2009, Ms. White, an African-American woman with some form of mobility impairment, was hired by the Oklahoma Office of Juvenile Affairs ("OJA") to work as a Food Service Specialist at the L.E. Rader Center ("Rader") in Tulsa, Oklahoma. Ms. White was a probationary employee during her employment at Rader. Pursuant to OJA policies and procedures, probationary employees may be discharged at any time during their probationary period without the right of appeal.

Rader has a policy prohibiting cell phones inside the facility. Additionally, on June 2, 2009, the Oklahoma Governor signed Oklahoma Senate Bill 1064, which made it a felony in Oklahoma to knowingly, and without authorization, bring a cell phone into a secure area of a state penal institution such as Rader. The bill was effective immediately.

On August 7, 2009, Juvenile Security Officer Jeanne Whitehead, formerly Jeanne Lott (hereafter "Ms. Whitehead"), and Youth Guardian Specialist Carolyn McElroy, both of whom were assigned to the front security gate of Rader, searched Ms. White's purse as she entered the Rader facility. They found a cell phone in her purse, wrapped in newspaper. Both Ms. Whitehead and Ms.

McElroy testified by affidavit that they "believed [Ms. White] was trying to conceal her phone because it was wrapped closely with newspaper and concealed in her purse." Whitehead Aff. ¶ 3, McElroy Aff. ¶ 4; Appellant's App. (hereafter "App.") at 87, 91. Ms. McElroy further stated that "Ms. White did not make any statement to [Ms. Whitehead or Ms. McElroy] or others at the security gate that it was an accident that she had her phone in her purse." McElroy Aff. ¶ 5; see also Whitehead Aff. ¶ 5; App. at 88, 91.

Ms. McElroy, an African American woman, reported the incident to supervisory personnel in a Multipurpose Report (a form used for incident reports) because cell phones were not allowed in the facility. She stated in her affidavit that, had Ms. White "made any statement suggesting it was accidental, [she] would have included her statement in the Multipurpose Report. I would not have reported the incident regarding [Ms. White's] phone if I had believed it was an accident instead of [Ms. White] trying to conceal the phone in order to bring it into the facility." McElroy Aff. ¶¶ 6,7; App. at 92. According to the Multipurpose Report, Ms. White (with Ms. Whitehead's permission) left the phone at the security checkpoint and retrieved it later. Multipurpose Incident Report at 1; App. at 94.

In her deposition, Ms. White testified that, during her training, she had been shown the policy that cell phones were not permitted at the facility, and that she had "no doubt" that cell phones were not permitted. White Dep. at 28; App.

at 98.  She further testified that she typically brought her phone with her on her way to work but left it in her car.  With respect to the particular August 7, 2009, incident where her cell phone was found in her purse, Ms. White testified that it was "more or less" wrapped inside a brochure because she "didn't want moisture in it."  Id. at 34-35; App. at 99-100.

Shortly after reviewing the August 7, 2009, Multipurpose Report describing the cell phone incident involving Ms. White, Rader superintendent Mike Moriarty recommended to OJA that Ms. White be terminated because of that incident.  On the morning of August 20, 2009, Ms. White's supervisor, Barbara Smith, asked Ms. White to go with her to speak to Mr. Moriarty because "the issue about the cell phone ha[d] come up again."  Id. at 71; App. at 112.  Ms. White met with Mr. Moriarty and explained what had happened with the cell phone.  She further asked, "how . . . that situation [would] affect [her] job."  Id. at 73; App. at 114.  Ms. White testified that Mr. Moriarty told her he "wasn't sure, but all of the paperwork had been forwarded to Oklahoma City."  Id.  Mr. Moriarty indicated that he did not have the final decision about her job.  Mr. Moriarty testified by affidavit that, during the August 20 meeting with Ms. White, he "informed [Ms. White], in Ms. Smith's presence, that the matter was no longer in [his] hands, and that [he] had forwarded the paperwork (referring to the Multipurpose Report) to Oklahoma City and had recommended her termination."  Moriarty Aff. ¶ 4; App. at 83.

Mr. Moriarty further testified that "[a]t no time during [Ms. White's] employment was [he] ever advised of any complaints by [Ms. White] regarding the lack of handicapped parking." Id. ¶ 12; App. at 84. He also stated that his recommendation to terminate Ms. White "was due to the August 7, 2009 cell phone incident," Id. ¶ 9; App. at 83-84.

Later on August 20, 2009, at some point during the afternoon, Ms. White left a handwritten signed note at the front security gate, which stated, "8-20-09[.] As of 5:00pm today, I am returning the keys & I.D. badge assigned to me by L.E. Radar [sic]. God Bless You[.] Patricia White." App. at 192. Mr. Moriarty testified that he believed the note (which he received on August 21, 2009) was a resignation note. Moriarty Aff. ¶ 5; App. at 83. He stated that he forwarded the note to Liz Davis and to Ms. White's supervisor, Ms. Smith, indicating in the "Subject" line of the email that it involved a "Resignation." Id. ¶ 6; App. at 83. He also notified OJA that Ms. White had resigned. Id.

Ms. White testified that she did not appear for work on Friday, August 21, 2009, nor did she call Ms. Smith to tell her she would not be coming to work. Ms. White's physician subsequently sent to Rader's Human Resources Department a series of "release from work" forms which successively released her for the periods of August 21, 2009 to August 24, 2009, August 24, 2009 to August 28, 2009, and August 31, 2009 to September 9, 2009.

Mr. Moriarty testified that, on or about August 25, 2009, he learned from OJA that Ms. White was claiming that she had not, in fact, resigned. Moriarty Aff. ¶ 7; App. at 83. Mr. Moriarty stated as follows:

> OJA also informed me it had determined to terminate [Ms. White] due to the cell phone incident, but her "resignation" had alleviated the need to terminate her. Since [Ms. White] had allegedly not resigned, OJA instructed me to proceed with the termination, as originally intended. Per OJA's instructions, I then revised Plaintiff's separation papers to indicate "termination."

Id. ¶ 8; App. at 83.

Meanwhile, on the same day Ms. White was found with the cell phone in her purse (August 7, 2009), Ms. Whitehead and Ms. McElroy observed another individual, Linda Triplett, trying to conceal her phone inside an eyeglass case in her purse. They testified by affidavit as follows:

> On August 7, 2009, YGS McElroy and I also observed Linda Triplett trying to conceal her phone inside an eyeglass case in her purse, in order to bring her phone into the facility. Ms. Triplett stated she was expecting a phone call. YGS McElroy and I reported the phone incident regarding Ms. Triplett in Multipurpose Reports because cell phones were not permitted in the facility. We were required to write reports on anyone that tried to conceal their phone in order to bring it into Rader.

Whitehead Aff. ¶¶ 6-7; McElroy Aff. ¶¶ 10-11; App. at 88, 92.

Mr. Moriarty testified that he reviewed the incident reports regarding Ms. Triplett, who is white, and notified OJA of the incident. Ms. Triplett was not, in fact, an employee of Rader, but, rather, was an employee of the Sand Springs School District. She was assigned by the District to teach juveniles at Rader.

-6-

OJA did not have the authority to terminate Ms. Triplett from her employment with the School District. OJA did, however, have the authority to ban her from the Rader facility. On September 1, 2009, Ms. Triplett was banned from Rader for violating the cell phone policy.

On September 5, 2009, another Rader employee, Jennifer Chance, was caught trying to sneak a phone into the Rader facility by concealing it in her bra. Mr. Moriarty received an incident report on that matter; Ms. Chance was subsequently terminated.

Ms. White also testified that she had complained two or three times a week to people at the security desk about the handicapped parking situation. In particular, she complained that, although she had a handicapped parking decal in her car, and the Rader parking lot had handicapped parking spaces, she had trouble finding a spot because vehicles without displayed handicapped decals were parking in the handicapped parking spaces. She testified that she did not talk to her supervisor about this problem because she assumed it was not her supervisor's responsibility. Rather, she claimed she assumed that the security personnel were responsible for dealing with handicapped parking. Ms. White testified that she did contact an administrator (Liz Davis) on one occasion about the handicapped parking problem, and Ms. Davis said she would contact someone in security. Ms. White testified, however, that she never followed up with Ms. Davis on this matter.

Ms. White claims, and she stated in her deposition, that she believed she was reprimanded for the cell phone incident because she is black, and in retaliation for complaining about handicapped parking. She further testified that, on the day of the cell phone incident (August 7, 2009), she complained to Ms. Whitehead that she had to park far away, but she did not specifically complain about the lack of available handicapped parking that day. She testified that she complained again to Ms. Whitehead on August 20.

On the other hand, Ms. White testified that she had no reason to believe that Mr. Moriarty's recommendation that she be terminated had any relationship to her complaints about the handicapped parking:

> Q:    But you had no reason to believe that Mr. Moriarty's recommendation of termination had any relation to your complaints about handicap parking, do you?
>
> A:    Mr. Moriarty had no connection at all with my complaints about the handicap parking.
>
> Q:    Do you think he even was aware that you ever . . . complained about handicap parking?
>
> A:    No.
>
> Q:    No, you don't think he was aware?
>
> A:    No.
>
> Q:    In your meeting with Mr. Moriarty on August 20th, was there any discussion about handicap parking?
>
> A:    No.

Q:      So is it your belief or your contention that the multipurpose report about your cell phone being hidden in newspaper was written up because you had complained about handicap parking?

A:      Okay.  I'm assuming that some key persons must have arrived, a form of irritation over my complaints about the handicap parking.

Q:      Who are the key persons you're referring to?

A:      I wasn't assuming I needed to take names and information about those persons when I was making the complaints continuously.

Q:      What is the retaliation?  What retaliation was taken against you?

A:      That they found my cell phone wrapped in newspaper – in which they did not.

Q:      So you're claiming that this report, multipurpose report, about your cell phone was written up in retaliation for you making complaints about handicap parking?  Is that your claim?

A:      I sure do.

Q:      Who are these key people that you're claiming were frustrated or annoyed with your complaints?  You can't identify them?

A:      I have no idea.

B:      So you . . . just are suspicious of that?

A:      Yes.

Q:      But you have no facts to support that suspicion, do you?

A:      No.

 . . . .

Q:     Okay.  So do you think your termination was related in any manner to your complaints of handicap parking?

A:     The first I understood the handicap – the complaints about handicap parking shouldn't have had anything to do with my termination.

Q:     Do you think that it did?

A:     No.

White Dep. at 119-121; App. at 123-25.

Ms. White filed a Charge of Discrimination with the Oklahoma Human Rights Commission ("OHRC") on October 23, 2009, alleging she had been discriminated against based on her disability and her race, and that she had suffered retaliation based on her complaints about the unavailability of handicapped parking.  On November 2, 2010, the OHRC issued a determination concluding that "there is reasonable cause to believe that the complaint is true and that the respondent has engaged in a discriminatory act as alleged." Determination; App. at 148.  A "Case Summary," also dated November 2, described in some detail the circumstances surrounding Ms. White's departure from Rader.[1]  Ms. White also provided a document titled "Interview Summary for

[1]The Case Summary concluded by stating that:

The evidence of record demonstrates that the complainant has a handicap parking decal and this was issued to her because of her mobility impairment.  She repeatedly complained about her inability to obtain a handicap parking space at the site and the security department's failure to enforce the parking rules so that those

(continued...)

-10-

Barbara Smith," dated February 10, 2010, with the reference "OHRC 016-A10ED

Patricia White v. L.E. Rader." App. at 156. The document purported to be a

summary of an interview of Ms. White's supervisor, Ms. Smith, by an unknown

OHRC representative. The document includes the following exchange:

> 6. Do you know of others here who have brought cell phones onto
> the property? If so, what happened with those persons? What were
> their races?
>
> Ms. Triplett had done this–as had Ms. Sherman. Smith said the
> management went back and did something to them after the disparate
> treatment was raised. Smith said they play favorites there and do not
> enforce the rules consistently. It really depends a lot on who's down
> at the security gate and how well you know them?

Interview Summary at 2; App. at 157.

Defendant (the State) filed a motion for summary judgment, arguing that

states enjoy Eleventh Amendment immunity from monetary damages brought by

employees for ADA violations, and that it "is entitled to judgment as a matter of

---

[1](...continued)
without handicap parking stickers could not take those designated
spaces. Further, upon learning of the situation, the respondent did
not do anything to rectify the problem []or provide the complainant
with an alternate parking solution that would've accommodated her
disability. It is evident then that the respondent also failed in its
duty to provide her with the reasonable accommodation she
requested. Thus, the complainant was denied the reasonable
accommodation and then discharged for an infraction that others who
are white and/or have not complained of discrimination before had
not been fired for doing previously. A clear pattern of disparate
treatment is therefore apparent.

Case Summary at 2, App. at 150.

law on each of [Ms. White's] claims because [Ms. White] cannot establish that she was unlawfully discriminated against or retaliated against by Defendant." Mot. for Summ. J. at 8-9; App. at 64-65. More specifically, the State averred that Ms. White:

> cannot establish a prima facie case for disparate treatment to support her race discrimination claim, nor can [Ms. White] establish that Defendant's decision to terminate [Ms. White] was due to her protected activity, i.e. complaints regarding handicapped parking. Instead, [Ms. White's] own actions caused her termination when she attempted to commit a felony by trying to sneak a concealed phone into the L.E. Rader Center.

Id. at 9; App. at 65.

The district court granted the State's motion, concluding: (1) with respect to her race discrimination claim, that the State "ha[d] come forward with a legitimate nondiscriminatory reason for terminating her, i.e., that she violated OJA policy prohibiting cell phones in penal institutions," and Ms. White presented no valid evidence of pretext; (2) with respect to her ADA claim, that the State also "ha[d] proffered a legitimate nondiscriminatory reason for terminating her, and White ha[d] failed to introduce admissible evidence that the stated reason is pretext"; and (3) with respect to her retaliation claim, that "[Ms.] White ha[d] failed to come forward with any admissible evidence of . . . a causal connection between the protected activity and the material adverse action" and that "the State proffered a legitimate, nondiscriminatory reason for [Ms. White's] termination." Op. & Order at 13-15; App. at 205-07. Ms. White appeals.

-12-

## DISCUSSION

"We review a district court's grant of summary judgment de novo, applying the same standard as the district court." Helm v. Kansas, 656 F.3d 1277, 1284 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the summary judgment evidence "in the light most favorable to the non-moving party." Helm, 656 F.3d at 1284. "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation marks omitted).

Ms. White claimed discrimination on the basis of race and handicap, and retaliation for complaints about the lack of handicapped parking, in violation of Title VII, 42 U.S.C. §§ 2000e – 2000e-17, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA").

### I. Race Discrimination/ Title VII Claim:

"A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792." Khalik v. United Air Lines, 671 F.3d

1188, 1192 (10th Cir. 2012). "[The] McDonnell Douglas . . . three-step analysis requires the plaintiff first prove a prima facie case of discrimination." Id. To establish a prima facie case, Ms. White "must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." Id. If Ms. White makes out a prima facie case, "[t]he burden then shifts to [the State] to produce a legitimate, non-discriminatory reason for the adverse employment action." Id. If the State meets that burden, "the burden then shifts back to [Ms. White] to show that her protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." Id.

"To show pretext, [Ms. White] must produce evidence showing weakness, implausibility, inconsistency, incoherency, or contradiction in [the State's] stated reasons, such that a reasonable jury could find them unconvincing." Debord v. Mercy Health System of Kansas, Inc., 737 F.3d 642, 655 (10th Cir. 2013) (further quotation omitted). Further, in making the determination "whether the proffered reason for a decision was pretextual, we examine the facts as they appear *to the person making the decision,* not as they appear to the plaintiff." Id. Finally, "we do not ask whether the employer's proffered reasons were wise, fair or correct; we ask only whether [the State] honestly believed those reasons and acted in good faith upon those beliefs." Id. (further quotation omitted).

-14-

As the district court noted, the State has conceded the first two elements of the prima facie case, in that Ms. White, an African-American, claims she was terminated (i.e., suffered an adverse action) because of her race. The disagreement lies in the third element of the prima facie case—disparate treatment. As the district court further observed, on this point Ms. White alleged that "[a] couple of other people, not black or handicapped, were found at the security gate with cell phones about the same time as Plaintiff. They were disciplined only after Plaintiff and her supervisor complained about disparate treatment for Plaintiff." Pl.'s Resp. to Mot. for Summ. J. ¶ 9; App. at 138-39. To support this claim, Ms. White relied upon her Charge of Discrimination, the Case Summary, and the Interview Summary. She also relied upon those documents, as well as the OHRC Determination, for her allegation that OJA's stated reason for terminating her (bringing the cell phone into the Rader facility) was pretextual. Thus, as the district court further observed, the admissibility and the significance of the OHRC Determination and related documents is a critical issue.

Ordinarily, the decision at trial of whether to admit a report like that of the OHRC in this case is left to the sound discretion of the trial court. Hall v. Western Prod. Co., 988 F.2d 1050, 1057 (10th Cir. 1993) (citing Perrin v. Anderson, 784 F. 2d 1040, 1046-47 (10th Cir. 1986)); Paolitto v. John Brown E. & C.,Inc., 151 F. 3d 60, 65 (2d Cir. 1998) ("Most circuits that have considered the issue have left the question of whether to admit EEOC or state-agency

-15-

findings to the sound discretion of the district court.").  As we stated in <u>Hall</u>, "[t]his court has held that, in civil actions, agency reports are admissible under Fed. R. Evid. 803(8)(C) if they are prepared pursuant to authority granted to the agency by law and are trustworthy."  <u>Hall</u>, 988 F.2d at 1057-58.  "This rule covers both factual findings and 'conclusions and opinions found in evaluative reports of public agencies.'"  <u>Id.</u> at 1058 (quoting <u>Perrin</u>, 784 F.2d at 1047).  The district court retains discretion, nonetheless, "to determine when otherwise relevant, thus admissible, evidence should be excluded" under Fed. R. Evid. 403.  <u>Id.</u>  In <u>Hall</u>, we approved the district court's determination to exclude the state agency report and related materials, stating that "all the evidentiary matter before [the state agency] could be presented to the jury in some other form or fashion and, therefore, the only purpose to be served by admitting into evidence the [state agency] report would be to suggest to the jury it should reach the same conclusion as [the state agency]."  <u>Id.</u>

In deciding whether to admit and consider the OHRC Determination and related materials, the district court also relied upon our decision in <u>Simms v. Dep't of Mental Health & Substance Abuse Servs.</u>, 165 F.3d 1321, 1331 (10th Cir. 1999).  In <u>Simms</u>, we affirmed the grant of summary judgment to the defendant/employer, rejecting the plaintiff's argument that a favorable letter of determination by the EEOC established a material issue of fact about whether the employer's proffered reason for denying him a promotion was pretext.  We stated:

-16-

Finally, [the Plaintiff] makes much of the fact that the EEOC had issued a favorable letter of determination regarding his claim of race-based failure to promote, and that he had presented the letter to the district court. However, when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one.

Id. at 1331; see also, Dinse v. Carlisle FoodService Prods., Inc., No. 12-6178, 2013 WL 5930804 (10th Cir. Nov. 6, 2013) (unpublished) (same); Konzak v. Wells Fargo Bank, 492 Fed. Appx. 906, 908 n.1 (10th Cir. Aug. 1, 2012) (unpublished) (same)[2]; Septimus v. Univ. of Houston, 399 F.3d 601, 610 (5th Cir. 2005) (holding that an EEOC "reasonable cause" determination letter did not constitute evidence precluding summary judgment when the other evidence was insufficient to create a genuine issue of material fact).

After examining the above authorities, the district court decided not to consider the OHRC documents in ruling on the State's motion for summary judgment. We agree with that decision. We further agree with the following statement of a federal district court which observed, in reliance on Simms:

the Court adjudicates the motion for summary judgment based on the presentation of independent facts by both sides, where relevant and admissible. As stated below, the Court concludes that Plaintiff fails to establish a genuine issue of material fact based on this independent evaluation, and like Simms, the Colorado Civil Rights Commission's determination does not create one.

---

[2]While we normally do not cite unpublished decisions as expressions of court authority, we cite these unpublished cases because they reiterate established Tenth Circuit authority.

Makeen v. Comcast of Colorado X, LLC., 2011 WL 3300392, at *6 (D. Colo.

May 6, 2011) (unpublished).

The district court accordingly addressed and resolved Ms. White's

argument as follows:

> Here, as in Simms and Makeen, White relies solely on the OHRC determination and related documents to support her claims of disparate treatment and pretext.  She has presented no independent evidence (other than her own belief) of disparate treatment based on race.  McElroy, who submitted the Multipurpose Report on her, is black.  Two other individuals caught trying to sneak cell phones were either banned from the facility (in the case of Triplett, the white school teacher) or fired (in the case of Chance, the black employee caught in September 2009).

> Even if plaintiff had presented evidence establishing a prima facie case, defendant has come forward with a legitimate nondiscriminatory reason for terminating her, i.e., that she violated OJA policy prohibiting cell phones in penal institutions.  And White's only "evidence" of pretext is the OHRC determination and related documents.  Therefore, defendant is entitled to summary judgment on the race discrimination claim.

Op. & Order at 13; App. at 205.  We agree fully with the district court's analysis

of the evidence relevant to the motion for summary judgment.  The State

accordingly is entitled to summary judgment on Ms. White's race discrimination

claim.

## II.  ADA Discrimination Claim:

"To state a prima facie case for discrimination under the ADA, [Ms. White]

must establish that:  (1) she is disabled; (2) she was qualified, with or without

reasonable accommodation, to perform the essential functions of her job; and (3)

-18-

her employer discriminated against her because of her disability." Robert v.
Board of Cnty. Comm'rs, 691 F.3d 1211, 1216 (10th Cir. 2012); Taylor v. Pepsi-
Cola, 196 F.3d 1106, 1109 (10th Cir. 1999). Once again, the State does not
dispute the first two elements of the prima facie case. The only dispute relates to
the third element—whether she presented any evidence of discrimination based on
her disability. On this point, we again agree with the district court that she failed
to present *any* evidence of discrimination. The district court accordingly
correctly granted summary judgment to the State on this claim.

**III. Retaliation Claim:**

Ms. White's final claim is that she was terminated because she complained
about the lack of handicapped parking and was thus subject to a retaliatory
dismissal. The ADA prohibits "discriminat[ion] against any individual because
such individual has opposed any act or practice made unlawful by this chapter"
and "interfere[nce] with any individual in the exercise or enjoyment of . . . any
right granted or protected by this chapter." 42 U.S.C. § 12203(a) and (b). To
establish a prima facie case of retaliation under the ADA, Ms. White must show
"(1) that she engaged in protected activity; (2) that she suffered a materially
adverse action by [the State] either after or contemporaneous with her protected
activity; and (3) a causal connection between the protected activity and the

adverse action." Reinhardt v. Albuquerque Pub. Schools Bd., 595 F.3d 1126, 1131 (10th Cir. 2010); Proctor v. UPS, 502 F.3d 1200, 1208 (10th Cir. 2007).

As the district court found, the only potentially disputed issue is the third element—a causal connection between her complaints about handicapped parking and her termination. Ms. White has once again failed to present any admissible evidence on this point: she submitted no complaints in writing; she could not identify the security personnel to whom she claimed she made verbal complaints; Ms. McElroy and Ms. Whitehead both testified that they never heard her make such complaints; Ms. White herself testified that she had no reason to believe that Mr. Moriarty's recommendation of termination was related *at all* to her complaints about handicapped parking. Indeed, she testified that she did not think Mr. Moriarty was even aware of her complaints about handicapped parking.

In short, the district court correctly summed up the only possible evidence supporting Ms. White's claim: "[t]he *only* admissible evidence White has submitted that could conceivably link her discharge to complaints about handicapped parking is her testimony that when she came in on the morning of August 7, she complained to [Ms. Whitehead] about having to park far away. But she also admitted she did not specifically complain about lack of handicapped parking. This scintilla of evidence is insufficient to rescue her claim from summary judgment." Op. & Order at 15; App. at 207.

-20-

We accordingly affirm the district court's grant of summary judgment to the defendant, the State, on Ms. White's retaliation claim.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge